[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 08, 2003
THOMAS K. KAHN
CLERK

No. 03-15095

D. C. Docket No. 03-T-1008

DAVID LARRY NELSON,

Plaintiff-Appellant,

versus

DONAL CAMPBELL, in his individual
and official capacity as Commissioner of
the Alabama Department of Corrections,
GRANTT CULLIVER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 8, 2003)

Before ANDERSON, HULL and WILSON, Circuit Judges.

ANDERSON, Circuit Judge:

David Larry Nelson is an Alabama inmate convicted of capital murder and

sentenced to death. On October 6, 2003, three days prior to his scheduled

execution, Nelson filed a 42 U.S.C. § 1983 action in the Middle District of Alabama. In his complaint, Nelson asserts that he has severely compromised veins and that Alabama's proposed use of a "cut-down" procedure to gain venous access (if access to a suitable vein cannot be achieved) as part of the lethal injection procedure constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.[1] Nelson further asserts a state law claim, pursuant to 28 U.S.C. § 1367, alleging that he has been denied access to his physician in violation of Alabama law. Among other relief, Nelson requests an order granting injunctive relief and staying his execution scheduled for October 9, 2003. By order dated October 7, 2003, the district court dismissed Nelson's complaint for lack of jurisdiction. We affirm.

As we stated in Hill v. Hopper, 112 F.3d 1088, 1088-1089 (11th Cir. 1997), "a prisoner may not circumvent the rules regarding second or successive habeas petitions by filing a § 1983 claim." See also Felker v. Turpin, 101 F.3d 95 (11th Cir. 1996); Spivey v. State Bd. of Pardons and Paroles, 279 F.3d 1301 (11th Cir. 2002). The full procedural history of this case prior to the instant § 1983 claim is set out

---

[1]The "cut-down" procedure would require making a two inch incision in Nelson's upper arm for the purpose of locating a peripheral vein to perform a central line procedure. The procedure would be performed using local anesthetic.

in detail in <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1293-1294 (11th Cir. 2002).

However, for the purposes of this appeal it is sufficient to state that Nelson

previously filed a federal habeas petition on April 14, 1997, alleging error due to

the trial courts failure to conduct a <u>Faretta</u> hearing prior to allowing him to

proceed <u>pro se</u> at his 1994 re-sentencing hearing. <u>Nelson v. Alabama</u>, 292 F.3d at

1294.[2]

Because Nelson has previously filed a federal habeas petition, we are

confronted with the question of whether Nelson's complaint seeking relief under

42 U.S.C. § 1983 constitutes the "functional equivalent" of a second or successive

habeas petition, such that it would be subject to the requirements 28 U.S.C. §

2244. <u>Fugate v. Dept. of Corrs.</u>, 301 F.3d 1287, 1288 (11th Cir. 2002); <u>Hill v.</u>

<u>Hopper</u>, 112 F.3d at 1089; <u>Felker v. Turpin</u>, 101 F.3d at 96. Nelson's § 1983 claim

alleges that Alabama's proposed possible[3] use of the "cut-down" procedure to gain

venous access as part of the lethal injection procedure constitutes cruel and

---

[2]Additionally, Nelson, through his counsel, acknowledged that he had exhausted all available habeas corpus relief and that he would have to get permission from the Eleventh Circuit in order to file a second or successive habeas petition. Tr. of In-Chambers Tel. Conference, Oct. 7, 2003, at *22-23.

[3]We say "possible" because Alabama first proposes to gain venous access through a femoral vein in Nelson's thigh and if unsuccessful through the external carotid artery in Nelson's neck, neither of which procedure Nelson challenges. It is only if venous access cannot be readily gained in those two areas that Alabama proposes to use the third alternative of the "cut-down" procedure.

unusual punishment. We addressed a similar § 1983 claim in Fugate v. Department of Corrections, 301 F.3d 1287. The plaintiff in Fugate asserted, among other challenges to the State of Georgia's lethal injection procedure, that the use of a "cut-down" procedure in the absence of a suitable vein violated the Eighth and Fourteenth Amendments. Compl. for Injunctive Relief and Decl. J., filed Aug. 12, 2002, ¶¶ 24-28, Fugate v. Dep't of Corrs., No. 02-02219-CV-CC (N.D. Ga. Aug. 13, 2002). On appeal, we held that the district court properly dismissed the § 1983 action to "enjoin and restrain the defendants from executing [Fugate] until they [took] certain measure[s] to minimize the risk of unnecessary pain, suffering and mutilation during the execution process," because the § 1983 action constituted the "functional equivalent" of a second habeas petition. 301 F.3d at 1288. Pursuant to Fugate, we conclude that Nelson's § 1983 claim also constitutes the "functional equivalent" of a second habeas petition as it seeks an immediate stay to the imposition of Nelson's death sentence. See Fugate, 301 F.3d at 1288; Spivey v. State Board of Pardons and Paroles, 279 F.3d 1301, 1303 & n.4. We believe that the instant case is indistinguishable from Fugate; both sought to minimize the risk of unnecessary pain during the execution process, and both sought to stay the execution until appropriate corrective measures were taken.

Because Nelson's § 1983 claim was the "functional equivalent" of a second

4

habeas petition and because Nelson did not get our permission to file a second habeas petition prior to filing in the district court as required by 28 U.S.C. §2244(b)(3)(A), the district court properly dismissed Nelson's § 1983 claim for lack of jurisdiction to entertain the claim. Fugate, 301 F.3d at 1288; Hill, 112 F.3d at 1089. Moreover, even had Nelson sought our permission to file a second habeas petition, the facts alleged indicate that Nelson's application would have been denied pursuant to 28 U.S.C. § 2244(b)(2) because his cruel and unusual punishment claim neither "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," nor has a "factual predicate for the claim [that] could not have been discovered previously through the exercise of due diligence... [that] if proven and viewed in light of the evidence as a whole, would be sufficient to establish... that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." See 28 U.S.C. § 2244(b)(2); Felker v. Turpin, 101 F.3d at 97; In re Provenzano, 215 F.3d 1233, 1235-1236 (11th Cir. 2000) (involving an application for second habeas petition challenging lethal injection as administered by the State of Florida as cruel and unusual punishment and dismissing it because the claim did not meet the requirements of § 2244(b)(2)).

With respect to Nelson's state law claim, we agree with the district court that it is barred by <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1994).

For the foregoing reasons the district court's judgment dismissing Nelson's complaint is affirmed. Nelson's motion to enjoin defendants from executing him is denied.

The judgment of the district court is AFFIRMED[4], and Nelson's motion for

---

[4]While the dissent's distinction of <u>Felker v. Turpin</u>, <u>Hill v. Hopper</u>, and possibly even <u>Gilreath v. State Board of Pardons & Paroles</u>, 273 F.3d 932 (11th Cir. 2001), may be plausible, we believe its attempt to distinguish <u>Fugate</u> is flawed. As noted in our opinion, we do not believe <u>Fugate</u> is distinguishable. Fugate was no more attempting to avoid his sentence than is Nelson. Both asserted that they were not challenging their sentence. <u>See</u> Compl. for Injunctive Relief and Decl. J., filed Aug. 12, 2002, at *1, <u>Fugate v. Dep't of Corrs.</u>, No. 02-02219-CV-CC (N.D. Ga. Aug. 13, 2002). (first sentence) ("Fugate ... brings this action pursuant to 42 U.S.C. § 1983 challenging not his sentence of death, nor lethal injection as a manner of inflicting death, but the failure of Georgia officials in changing from electrocution to lethal injection to take sufficient measures to minimize the risk of him experiencing extreme and excruciating pain"). In both this case and in <u>Fugate</u>, the appellants suggested less painful alternative ways to implement lethal injection. In short, both cases sought to "enjoin ... the defendants from executing him <u>until</u> they take certain measures to minimize the risk of unnecessary pain." <u>Fugate</u>, 301 F.3d at 1288 (emphasis added).

We also reject the dissent's suggestion that Nelson's attempt to stay his execution is irrelevant to the "functional equivalent" issue. <u>See</u> <u>Spivey v. State Bd.of Pardons and Paroles</u>, 279 F.3d at 1303 (reviewing our decision in <u>Gilreath</u> and stating "In reviewing the denial of a motion for preliminary injunction to stay Gilreath's execution, the Court held that '[w]e look at the kind of relief Appellant seeks and conclude that, however the Appellant describes it, the motion was for habeas corpus relief.'"); <u>See also</u> <u>Spivey</u>, 279 F.3d at 1304 n.4 (distinguishing the claim in <u>Spivey</u> from the claim in <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272, 118 S. Ct. 1244 (1998), stating "There, no execution date was imminent, and there is no indication that Woodard's claims would necessarily imply a challenge to the imposition of a death sentence."). Nelson's prayer to stay his execution directly impedes the implementation of the state sentence, and is indicative of an effort to accomplish via §1983 that which cannot be accomplished by a successive petition for habeas corpus. <u>Bradley v. Pryor</u>, 305 F.3d 1287 (11th Cir. 2002), is

6

stay of execution is DENIED.[5]

---

readily distinguished from the instant case. That case involved no attempt to stay Bradley's execution, and no attempt to interfere with the implementation of the state sentence.

[5]The Appellant's request for oral argument is denied.

WILSON, Circuit Judge, dissenting:

The majority holds that Nelson's Eighth Amendment claim challenging the unique manner of his execution, filed under 42 U.S.C. § 1983, is the "functional equivalent" of a habeas petition, and is therefore subject to the requirements governing second or successive habeas petitions under 28 U.S.C. § 2244. In light of the clear authority indicating that Nelson's claim should be construed exclusively under § 1983, I strongly disagree with the majority's holding.

Nelson seeks only a temporary stay of execution until concerns regarding the manner of his execution are addressed.[1]

A complaint seeking § 1983 relief in the form of a temporary stay of execution is not automatically equivalent to a successive habeas petition. Before making the determination of whether such a stay should be considered a habeas petition or a civil rights action, the court must inquire into the fundamental question of whether the plaintiff is actually seeking to challenge either the fact of

---

[1]The majority notes that Nelson filed his § 1983 claim only three days prior to his execution. However, the procedure at issue here had never before been implemented in Alabama and prison officials had to craft a special procedure to govern Nelson's execution. It is unclear at what point they finalized the procedure and notified Nelson of it. Even in light of the chance that Nelson seeks redress in the courts solely as a means of delaying the inevitable, the possibility of his only recently being notified of the procedure requires our caution.

his conviction or the duration of his sentence–the touchstones of habeas relief.[2]  If the plaintiff's § 1983 complaint "would necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed.  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  On the contrary, "if the plaintiff's action . . . even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  *Id*.  In this case, Nelson was sentenced to death by lethal injection, not by lethal injection subject to any painful secondary procedure that Alabama state prison officials deem appropriate.  He thus challenges neither his conviction nor his sentence.  Rather, he requests the opportunity to enforce his Eighth Amendment rights; an opportunity that, as noted by the district court, would be wholly absent if this action were deemed the equivalent of a second habeas petition.

Appellees assert that this case is controlled by this court's decision in *Fugate v. Dep't of Corrs.*, 301 F.3d 1287 (11th Cir. 2002) (per curiam).  In *Fugate*, an inmate sought a stay of execution, alleging that the manner in which Georgia

---

[2]A court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court *only on the ground* that he is *in custody* in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254 (2003) (emphasis added).  Here, Nelson does not make such a challenge.

administered its lethal injections was cruel and unusual under the Eighth Amendment. We held that the district court lacked jurisdiction to consider Fugate's claim because it was the functional equivalent of a second habeas petition, and he had not previously applied to this court for permission to file such a petition under § 2244(b)(3)(A). *See Fugate*, 301 F.3d at 1288. Although the facts in *Fugate* are similar to those in this case, *Fugate* does not control the question before us. Fugate was sentenced to death by lethal injection under Georgia law. By seeking a stay of execution on the basis of a challenge to Georgia's method of administering its lethal injections, Fugate was, in effect, attempting to avoid his specific sentence. Therefore, the decision that Fugate's claim was the "functional equivalent" of a successive habeas petition was reasonable.[3] The same is true of our decisions in *Hill v. Hopper*, 112 F.3d 1088 (11th Cir. 1997) (per curiam) (holding that an inmate's constitutional challenge to electrocution as means of execution was the functional equivalent of a second habeas petition) and *Felker v. Turpin*, 101 F.3d 95 (11th Cir. 1996) (per curiam). Here, however, Nelson is not seeking to avoid execution by lethal injection under

---

[3]Nevertheless, I believe that our decisions in *Fugate* and its prior related cases are questionable under the standards defining habeas actions. A challenge to the *manner* in which an inmate is executed, in general, is not necessarily a challenge to the inmate's sentence of death or his conviction. The inmate's execution will presumably proceed, either in the same manner or in a different manner, pending subsequent proceedings. An avenue for review of Eighth Amendment claims must remain available to those facing death at the hands of the state.

Alabama law. The "cut down" procedure that is to be used in his execution is not within Alabama's execution procedure, nor has it been reviewed to ensure that it passes muster under the Eighth Amendment. Nelson merely requests that a different, more humane procedure known as "percutaneous central venous cannulation" be used to carry out his execution, rather than the outmoded and painful "cut down" procedure. Regardless of which procedure is used, Nelson will be executed by lethal injection in accordance with his sentence. However, with the implementation of the "cut down" procedure, Nelson's Eighth Amendment rights may be compromised in the process.

The district court noted that the rulings of the Eleventh Circuit appear to make a distinction between cases in which a death row inmate's execution is imminent and cases in which execution is not imminent. In *Bradley v. Pryor*, 305 F.3d 1287 (11th Cir. 2002), which was decided within weeks of *Fugate*, we held that a death row inmate's § 1983 action for production of DNA evidence was not a successive habeas petition because it "neither directly, nor by necessary implication, attack[ed] the validity of his conviction and sentence." *Bradley*, 305 F.3d at 1288. In his concurrence, and without further explanation, Chief Judge Edmondson stressed that the fact that Bradley did not request a stay of his execution as part of his claim was an "important" part of his decision. *Id*. at 1292

11

(Edmondson, C.J., concurring).

However, I fail to see the relevance of a request for a stay of execution to the question of whether an action is the equivalent of a habeas petition. In *Gilreath v. State Bd. of Pardons & Paroles*, 273 F.3d 932 (11th Cir. 2001) (per curiam), we held that a death row inmate's motion for a preliminary injunction to stay his execution pending an appeal in a clemency proceeding was equivalent to a second habeas petition. However, we did not hold that *every* motion for a stay of execution was tantamount to a petition for habeas relief. In fact, we stated in the opinion that "[w]e look to the kind of relief [the inmate] seeks from the federal courts" in determining whether a petitioner seeks habeas relief. *Id*. at 933. Since the inmate in *Gilreath* sought clemency, or relief from his penalty, it was clear that his petition for a stay of execution was for the purpose of attacking his sentence. Here, Nelson's request for a stay has no bearing on his conviction or his sentence, nor will it ever. If his stay is granted, he will at most have a limited opportunity to pursue his Eighth Amendment claims. Whatever the outcome, Nelson will be executed.

Nelson asks not to be spared; he asks only that he be executed humanely in accordance with his constitutional rights. The bottom line in this case is that the outcome of Nelson's petition has no effect on either his sentence or his conviction,

12

and therefore cannot properly be construed under any circumstances as the equivalent to a subsequent habeas petition.  Therefore, pursuant to *Heck v. Humphrey*, Nelson's § 1983 action should be allowed to proceed.  512 U.S. at 487.

I respectfully dissent.