45 So.3d 444 (2010)
Dolan DARLING a/k/a Sean Smith, Appellant,
v.
STATE of Florida, Appellee.
Dolan Darling a/k/a Sean Smith, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC09-1249, SC09-555.
Supreme Court of Florida.
July 1, 2010.
Rehearing Denied September 15, 2010.
*445 Bill Jennings, Capital Collateral Regional Counsel, Mark S. Gruber and Maria Perinetti, Assistant CCR Counsel, Middle Region, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
This case is before the Court on appeal from an order denying the successive postconviction motion of Dolan Darling (a/k/a Sean Smith) filed pursuant to Florida Rule of Criminal Procedure 3.851. Through this motion, Darling challenges the constitutionality of lethal injection as administered in Florida and the constitutionality of sections 945.10 and 27.702, Florida Statutes *446 (2007). Darling also requests this Court to recede from those portions of our prior decisions that have interpreted chapter 27, Florida Statutes, and held that Capital Collateral Regional Counsel (CCRC) attorneys cannot assist capital defendants in challenging the State's intended method of execution under 42 U.S.C. § 1983 (2006). We reject each of Darling's claims and affirm the circuit court's denial of the successive postconviction motion. However, based upon recent developments with regard to the litigation of challenges to methods of execution we agree with Darling as to statutory construction and hold that CCRC attorneys are permitted to file section 1983 claims on behalf of capital defendants if, and only if, they are challenging and seek to enjoin an integral part of the judgment and sentence, the State's intended method of execution.

Background
Dolan Darling is an inmate under sentence of death. As of June 2010, the Governor has not signed a death warrant for Darling. Through our prior opinions addressing Darling's direct and postconviction appeals, we have detailed the facts and procedural background surrounding the offense. See Darling v. State, 808 So.2d 145 (Fla.2002) ("Darling I"); Darling v. State, 966 So.2d 366 (Fla.2007) ("Darling II").
Most recently, in November 2007, Darling filed a successive motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, which he claims is based on "newly discovered evidence." In this motion, Darling (1) assails the constitutionality of lethal injection as currently administered in Florida; (2) asserts that section 27.702, Florida Statutes (2007), as interpreted by this Court, is unconstitutional facially and as applied because it prohibits CCRC from filing lethal-injection challenges under 42 U.S.C. § 1983; (3) claims that section 945.10, Florida Statutes (2007), as interpreted by this Court, is unconstitutional because it prohibits him from discovering the identities of his executioners, which precludes him from determining the adequacy of their qualifications and training; and (4) alleges that the American Bar Association's (ABA) report entitled, "Evaluating Fairness and Accuracy in the State Death Penalty Systems: The Florida Death Penalty Assessment," reveals that Florida's death-penalty system is seriously flawed and unconstitutional.[1]
In February 2008, the trial court issued an order holding Darling's successive motion in abeyance pending issuance of the United States Supreme Court's opinion in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). In June 2008, following the United States Supreme Court's decision in Baze, the trial court lifted its stay holding the case in abeyance and granted the State's motion for rehearing. In his amended rule 3.851 successive motion to vacate sentence filed in February 2009, Darling reexamined three of the four claims raised in his initial motion in light of Baze, but chose to abandon the ABA report claim. The trial court denied Darling's amended motion to vacate sentence, and Darling subsequently appealed that decision to this Court. In June 2009, Darling filed a petition to invoke our all writs jurisdiction, challenging this Court's *447 interpretation of section 27.702, Florida Statutes (2007).

Constitutionality of Lethal Injection as Administered in Florida
In Ventura v. State, 2 So.3d 194 (Fla.2009), this Court articulated the appropriate standard of review for a successive postconviction motion:
Rule 3.851(f)(5)(B) permits the denial of a successive postconviction motion without an evidentiary hearing "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief." A postconviction court's decision regarding whether to grant a rule 3.851 evidentiary hearing depends upon the written materials before the court; thus, for all practical purposes, its ruling is tantamount to a pure question of law and is subject to de novo review. See, e.g., Rose v. State, 985 So.2d 500, 505 (Fla.2008). In reviewing a trial court's summary denial of postconviction relief, we must accept the defendant's allegations as true to the extent that they are not conclusively refuted by the record. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). The Court will uphold the summary denial of a newly-discovered-evidence claim if the motion is legally insufficient or its allegations are conclusively refuted by the record. See McLin v. State, 827 So.2d 948, 954 (Fla.2002).
Id. at 197-98.
In his postconviction motion and brief, Darling has simply re-alleged the criticisms of Florida's revised protocol that have been presented in previous postconviction motions filed by the CCRC. This Court has repeatedly rejected Eighth Amendment challenges to Florida's August 2007 lethal-injection protocol. See, e.g., Marek v. State, 8 So.3d 1123, 1130 (Fla.), cert denied, ___ U.S. ___, 130 S.Ct. 40, 174 L.Ed.2d 625 (2009); Ventura, 2 So.3d at 202; Sexton v. State, 997 So.2d 1073, 1089 (Fla.2008); Schwab v. State, 995 So.2d 922, 933 (Fla.2008); Tompkins v. State, 994 So.2d 1072, 1081 (Fla.2008) (concluding that the Lightbourne v. McCollum, 969 So.2d 326 (Fla.2007), decision is further supported by the performance of the Schwab and Henyard[2] executions "with no subsequent allegations of any newly discovered problems with Florida's lethal injection process"); Power v. State, 992 So.2d 218, 221 (Fla.2008); Woodel v. State, 985 So.2d 524, 533-34 (Fla.2008); Lebron v. State, 982 So.2d 649, 666 (Fla.2008); Lightbourne, 969 So.2d at 350-53; Schwab v. State, 969 So.2d 318, 325 (Fla.2007) ("Given the record in Lightbourne and our extensive analysis in our opinion in Lightbourne v. McCollum, we reject the conclusion that lethal injection as applied in Florida is unconstitutional.").
Further, Darling's contention that this Court's recent lethal-injection decisions, including Lightbourne, have not applied the standard articulated by the Baze plurality was considered and rejected by this Court in Ventura. See Ventura, 2 So.3d at 198-201. Although Darling claims that the United States Supreme Court's decision in Baze warrants a reassessment of Florida's lethal injection protocol, this Court has made it abundantly clear that "[n]othing contained within the various opinions of Baze v. Rees affects the validity of our decisions upholding Florida's current lethal-injection protocol." Id. at 202.
This Court has previously considered and rejected each of Darling's constitutional challenges to Florida's lethal-injection protocol. We decline to recede from our prior precedent.

Constitutionality of Section 945.10
Darling's constitutional challenge against section 945.10, Florida Statutes *448 (2007), which prevents a defendant sentenced to death from discovering the identities of his or her executioners, is procedurally barred because of his failure to assert it in prior postconviction proceedings. Moreover, this Court has consistently rejected similar claims on the merits. See Ventura, 2 So.3d at 197 n. 3 ("This Court has already addressed and rejected similar claims with regard to sections 27.702 and 945.10, Florida Statutes (2007)."); Henyard, 992 So.2d at 130 ("[Appellant] alleges section 945.10, Florida Statutes, which exempts the disclosure of the identity of an executioner from public records, is unconstitutional. We previously found section 945.10 facially constitutional and decline to recede from our decision now." (citing Bryan v. State, 753 So.2d 1244, 1250 (Fla.2000); Provenzano v. State, 761 So.2d 1097 (Fla.2000))).
Furthermore, even if the Court were willing to recede from this precedent, as of this date the Governor has not signed a death warrant for Darling; thus, even if ordered to do so, the Department of Corrections could not state with any certainty who Darling's eventual executioners will be. Cf. Lightbourne, 969 So.2d at 343 ("This Court previously stated that there is a presumption that the members of the executive branch will properly perform their duties in carrying out an execution." (quoting Provenzano v. State, 761 So.2d 1097, 1099 (Fla.2000) (brackets omitted))).
Darling simply requests that we recede from prior precedent so that he may engage in an in-depth review of his executioners' qualifications and training. We refuse to do so.

Method of Execution Challenges Pursuant to 42 U.S.C. § 1983
Through his postconviction motion and all-writs petition, Darling makes numerous challenges to our prior decisions that preclude CCRC attorneys from pursuing section 1983 claims that challenge the State's intended method of execution, which, contrary to the view of the dissent, is an integral part of the judgment and sentence. We begin our analysis with an overview of the comprehensive state and federal statutory schemes governing the representation of capital defendants.
Section 27.702, Florida Statutes provides:
(1) The capital collateral regional counsel shall represent each person convicted and sentenced to death in this state for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court. The capital collateral regional counsel and the attorneys appointed pursuant to s. 27.710 shall file only those postconviction or collateral actions authorized by statute....
(2) The capital collateral regional counsel shall represent persons convicted and sentenced to death within the region in collateral postconviction proceedings, unless a court appoints or permits other counsel to appear as counsel of record.
Section 3599 of title 18, United States Code (2006) provides:
(a)(1) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate *449 representation or investigative, expert, or other reasonably necessary services at any time either
(A) before judgment; or
(B) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).
(2) In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).
....
(e) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.
(Emphasis supplied.)
Both the federal and state statutory schemes share a common goal: to ensure that defendants sentenced to the harshest of all punishments receive fair, effective, and efficient representation during the postconviction appellate process. The two schemes are structured to work seamlessly together, designed and intended to ensure that capital defendants will not be required to attempt to navigate the extremely intricate and complex capital appeals process without counsel as they face the ultimate penalty. This principle is illustrated in section 27.702(3)(a), Florida Statutes:
(3)(a) The capital collateral regional counsel shall file motions seeking compensation for representation and reimbursement for expenses pursuant to 18 U.S.C. s. 3006A when providing representation to indigent persons in the federal courts....
(Emphasis supplied.)
Keeping in mind the symbiotic relationship between the federal and state capital representation statutes, we must direct our analysis to method of execution challenges, which are integral to the legality of the judgment and sentence, in federal court. "Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus and a complaint under [42 U.S.C. § 1983]." Hill v. McDonough, 547 U.S. 573, 579, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006) (citation omitted). Technically, both of these mechanisms are civil in nature. See State ex rel. Butterworth v. Kenny, 714 So.2d 404, 409 (Fla.1998).
Section 27.702(1), Florida Statutes, provides, in relevant part, that CCRC and registry attorneys "shall file only those postconviction or collateral actions authorized by statute." Section 27.7001, Florida Statutes, provides that such "collateral representation shall not include representation during retrials, resentencings, proceedings commenced under chapter 940, or civil litigation." (Emphasis *450 supplied.) In Kenny, however, we clarified that habeas petitions, although technically civil in nature, were not included within the purview of section 27.7001:
Technically, habeas corpus and other postconviction relief proceedings are classified as civil proceedings. Unlike a general civil action, however, wherein parties seek to remedy a private wrong, a habeas corpus or other postconviction relief proceeding is used to challenge the validity of a conviction and sentence. See, e.g., [Murray v. Giarratano, 492 U.S. 1, 13[, 109 S.Ct. 2765, 106 L.Ed.2d 1] (1989)] (O'Connor, J., concurring) (postconviction proceeding is a civil action designed to overturn a presumptively valid criminal judgment); O'Neal v. McAninch, 513 U.S. 432, 440[, 115 S.Ct. 992, 130 L.Ed.2d 947] (1995) (habeas is a civil proceeding involving someone's custody rather than mere civil liability). Consequently, postconviction relief proceedings, while technically classified as civil actions, are actually quasi-criminal in nature because they are heard and disposed of by courts with criminal jurisdiction. We conclude that the legislature, in expressing its intent to prohibit CCRC from engaging in civil litigation on behalf of capital defendants, meant only to prohibit CCRC from engaging in civil litigation other than for the purpose of instituting and prosecuting the traditional collateral actions challenging the legality of the judgment and sentence imposed.
Id. at 409-10 (emphasis supplied).
Although we held in Kenny that habeas petitions are quasi-criminal and thus not restricted by section 27.7001, we also held at that time that section 1983 claims are not quasi-criminal and are therefore considered "civil litigation" pursuant to section 27.7001. See id. at 410. It is, however, essential to read our holding in Kenny concurrently with federal jurisprudence as it existed at the time it was decided. Our exclusion of section 1983 method of execution claims from the purview of CCRC representation was consistent with the then-current Eleventh Circuit precedent, which categorically eliminated all section 1983 method-of-execution challenges. See Felker v. Turpin, 101 F.3d 95, 96 (11th Cir.1996). Accordingly, at the time Kenny was decided, a method-of-execution challenge pursuant to section 1983 was not a "collateral action" for which a capital defendant was entitled to CCRC representation. Felker remained the prevailing law in the Eleventh Circuit through 2004. See Nelson v. Campbell, 347 F.3d 910, 912 (11th Cir.2003) (citing Fugate, 301 F.3d at 1288); Fugate v. Dep't of Corrections, 301 F.3d 1287, 1288 (11th Cir.2002) (citing Hill, 112 F.3d at 1089); Hill v. Hopper, 112 F.3d 1088, 1088-89 (11th Cir.1997) (citing Felker, 101 F.3d at 96) rev'd, 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004).
More recently, however, the landscape with regard to method-of-execution challenges has changed dramatically. In Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), the United States Supreme Court rejected the line of cases in the Eleventh Circuit that held that method-of-execution challenges are not cognizable as section 1983 claims. In that case, "the Eleventh Circuit held that petitioner was without recourse to challenge the constitutionality of [a lethal injection] procedure in Federal District Court." Id. at 643, 124 S.Ct. 2117. The High Court reversed the decision of the Eleventh Circuit and held that constitutional claims that challenge a State's intended method of execution may be brought under section 1983. See id. Accordingly, for the first time since Kenny, a section 1983 method of execution challenge was cognizable in the Eleventh Circuit. *451 The High Court reaffirmed its disapproval of the Eleventh Circuit's systematic dismissal of all section 1983 method of execution claims in Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006).
The dissent, relying on Nelson, states that a method of execution challenge is not an attack on an integral part of the judgment and sentence, and if it were, it would not be cognizable in a section 1983 action. See dissenting op. at 458. A plain reading of Nelson, however, states the exact opposite. In Nelson, the Court stated that
[i]n a state ... where the legislature has established lethal injection as the preferred method of execution, a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.

541 U.S. at 644, 124 S.Ct. 2117 (citation omitted) (emphasis supplied). With regard to whether such an action is cognizable in a section 1983 action, the Supreme Court explicitly avoided that question in Nelson. See id. ("We need not reach here the difficult question of how to categorize method-of-execution claims generally.") Here, the challenge is directed to totally prohibiting the use of lethal injection, which the United States Supreme Court recognized as an attack upon the sentence and not just one aspect of the method of death. The dissent does not afford all parts of Nelson a fair reading.
In Diaz v. State, 945 So.2d 1136 (Fla. 2006), we noted that our decision in Kenny did not violate Diaz's due process rights because CCRC attorneys can challenge Florida's intended method of execution by means of a federal habeas petition. See 945 So.2d at 1154. Specifically, we stated:
Thus, had Diaz raised a lethal injection claim in either of his two state habeas petitions that were filed after lethal injection was adopted as the method of execution in Florida, he could have then raised the claim in his initial federal habeas petition that was pending from 1999 until 2004.

Id. at 1155 (emphasis supplied). We further noted that "the United States Supreme Court [in Hill] did not hold that a constitutional challenge to lethal injection procedures could not be brought under a habeas petition." Id. at 1154.
Darling does appear to be correct that reading the United States Supreme Court decision in Hill and this Court's decision in Diaz together undermines the rationale of this Court in Diaz that inmates sentenced to death represented by CCRCwho are seeking federal review of Florida's current lethal-injection protocolmay file a federal habeas petition in lieu of a section 1983 action. See Diaz, 945 So.2d at 1154 ("Diaz did have an alternative avenue for challenging the lethal injection procedure in federal court [a federal habeas petition], but did not utilize it."). This view was clearly articulated in Justice Lewis's dissenting opinion in Cox v. State, 5 So.3d 659 (Fla.2009):
In relevant part, section 27.702(1), Florida Statutes (2008), provides that CCRC and registry counsel "shall file only those postconviction or collateral actions authorized by statute." In turn, section 27.7001, Florida Statutes (2008), provides that such "collateral representation shall not include representation during retrials, resentencings, proceedings commenced under chapter 940 [i.e., executive-clemency proceedings], or civil litigation." (Emphasis supplied.) Through this statute, the Legislature undoubtedly intended to prevent CCRC and registry counsel from pursuing claims for civil damages against state employees, officers, and agents. Certainly, as a general matter, actions filed pursuant to 42 U.S.C. § 1983 may be *452 used for just that purpose, but that is not the sole, or even predominant, application of section 1983 actions in this context. Instead, capital defendants such as Cox wish to use section 1983 actions as a means of challenging Florida's current lethal-injection protocol in federal court (and have in no way sought civil damages). See generally Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006). This is precisely the same relief that these inmates now seek through successive federal habeas petitions (for which CCRC and registry counsel are provided). However, these successive habeas petitions are a fruitless endeavor for both the inmates and the State because the federal courts are statutorily bound to reject such claims based upon the plain text of 28 U.S.C. § 2244(b)(2)(A), (b)(2)(B)(i)-(ii) (2000). See, e.g., In re Schwab, 506 F.3d 1369, 1370 (11th Cir. 2007) ("[An Eighth Amendment] claim [challenging Florida's current lethal-injection protocol] cannot serve as a proper basis for a second or successive habeas petition. It cannot because it neither relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, 28 U.S.C. § 2244(b)(2)(A), nor involves facts relating to guilt or innocence, see 28 U.S.C. § 2244(b)(2)(B)(ii)."). This limitation does not apply to section 1983 actions.
Under these circumstances, the rule and rationale expressed in State ex rel. Butterworth v. Kenny, 714 So.2d 404 (Fla.1998), are founded upon an untenable legal fiction. In that decision, we held that sections 27.7001 and 27.702, Florida Statutes (1997), prohibit CCRC from representing capital inmates during section 1983 actions, but not habeas proceedings. We recognized that habeas petitions have historically been viewed as civil in nature, but then differentiated claims brought through this writ-based mechanism as truly "quasi-criminal," in supposed contrast to all section 1983 claims. 714 So.2d at 409-10. This distinction becomes an analytical non sequitur when the same claims are asserted through habeas petitions and section 1983 actions. If such is the case, as it is in the lethal-injection context, then these section 1983 actions are just as "quasi-criminal" as the alternative habeas petitions. Viewed functionally, these mode-of-execution claims regardless of procedural mechanism seek the same relief: a finding that Florida's current lethal-injection protocol poses a substantial risk of severe pain that may be remedied through a proffered alternative procedure that is feasible and readily implemented. Therefore, in this context, the rule and rationale that we expressed in Kenny lack explanatory and precedential power. I would thus limit Kenny's impact to claims seeking civil relief that is wholly unrelated to an inmate's conviction, sentence, or means of carrying out that sentence. Mode-of-execution challengeswhether asserted through a habeas petition or a section 1983 actionhave become typical postconviction relief proceedings for which CCRC counsel should be provided. The plain text of the relevant statutes does not preclude this result.
Id. at 661-62 (alterations in original) (footnote omitted).
We now conclude that the analysis by Justice Lewis in Cox is correct. Within the last year, federal trial and appellate courts in the Eleventh Circuit have interpreted Hill to provide that section 1983 is the exclusive venue for challenging a state's intended method of execution. See Tompkins v. Sec'y Dep't. of Corrs., 557 F.3d 1257, 1261 (11th Cir.2009) ("A § 1983 lawsuit, not a habeas proceeding, is the *453 proper way to challenge lethal injection procedures." (citing Hill, 547 U.S. at 579-83, 126 S.Ct. 2096; Grayson v. Allen, 491 F.3d 1318, 1322 (11th Cir.2007))); see also Griffin v. McNeil, 667 F.Supp.2d 1340, 1373 (S.D.Fla.2009) ("[A] challenge to lethal injection procedures may not be raised in a habeas petition, and may only be brought in a § 1983 lawsuit." (citing Tompkins, 557 F.3d at 1261)); Hertz v. McNeil, No. 4:06cv507-RS, 2009 WL 3161813, at *35 (N.D.Fla. Sept.25, 2009) ("The Supreme Court has held that this type of claim properly can be brought only under 42 U.S.C. § 1983 and the Prison Litigation Reform Act, not in this habeas proceeding." (citing Hill v. McDonough, 547 U.S. 573, 583-84, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006); Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir.2006))).
In light of these new decisions, we must reevaluate our decision in Kenny and the foundational principles upon which the interpretation of chapter 27 was based at that time as suggested by Justice Lewis in Cox because Kenny does not stand alone. As indicated above, in Hill, 547 U.S. at 579, 126 S.Ct. 2096 (quoting Muhammad v. Close, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004)), the United States Supreme Court stated:
"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983."
In Kenny and Diaz we held that CCRC attorneys may not represent capital defendants in any section 1983 action but may file method-of-execution challenges pursuant to the federal habeas statute. In Tompkins, the Eleventh Circuit held that habeas petitions are not proper for challenging a state's intended method of execution. The practical effect of the more restrictive statutory construction and holdings of these recent cases is the extension of an incorrect fiction and creation of an unintended gap in representation for capital defendants. Now, under our current interpretation of chapter 27, CCRC attorneys are not permitted to assist capital defendants to challenge the method of execution portion of the judgment and sentence, which is integral to the legality of the judgment and sentence, in federal court by any means. This result, the product of a change in federal case law made after the passage of chapter 27 and after Kenny, yields a result that neither the Legislature nor this Court could have foreseen. We cannot, as the dissent would have this Court do, read Kenny in a total vacuum given the delicate relationship between the federal and state jurisprudence in the capital context. Accordingly, to fulfill the purpose and intent of chapter 27 and to reconcile the now incorrect assumption upon which Kenny was based, we must now recede from the interpretation of those portions of our prior decisions only to the extent that it would preclude CCRC and registry counsel from representing capital defendants in method of execution challenges seeking injunctive relief pursuant to section 1983. Today, we hold that section 1983 actions that challenge Florida's intended method of execution as set forth in the judgment and as part of the sentence seeking injunctive relief are, like habeas petitions, quasi-criminal in nature and are therefore not included under section 27.7001's restriction on civil litigation.
Our interpretation and holding today is consistent with the Legislature's intent. In Kenny, we held that quasi-criminal claims, although technically civil in nature, were not included within the restriction of section 27.7001 because they are "collateral actions." 714 So.2d at 409-10. Challenges *454 to the method of execution portion of a judgment and sentence are certainly "collateral actions" and, while previously such challenges could be asserted by way of a habeas petition, the Eleventh Circuit has interpreted Hill to require that such claims be presented in a section 1983 action. Accordingly, we interpret this additional very narrow window to allow CCRC attorneys to file section 1983 claims for injunctive relief to challenge the State's intended method of execution as "collateral actions."
Our decision today is also compelled by federal law because representation for method-of-execution challenges pursuant to section 1983 is mandatory. Section 3599(a)(2) of title 18, United States Code, provides:
In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).
Section 3599(e) states:
Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.
(Emphasis supplied.)
In Harbison v. Bell, ___ U.S. ___, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009), the United States Supreme Court provided that
"[u]nder a straightforward reading of [§ 3599], subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsels duties. See § 3599(a)(2) (stating that habeas petitioners challenging a death sentence shall be entitled to "the furnishing of... services in accordance with subsections (b) through (f)"). Thus, once federally funded counsel is appointed to represent a state prisoner in § 2254 proceedings, she "shall also represent the defendant in such ... proceedings for executive or other clemency as may be available to the defendant. § 3599(e).
Harbison, 129 S.Ct. at 1486 (emphasis supplied).
Harbison clearly establishes that an attorney who is appointed under section 3599(a)(2) is bound by the conditions imposed by section 3599(e). One of those conditions is that such an attorney shall represent the capital defendant throughout every subsequent stage of available judicial proceedings, including all available postconviction processes. As established by the United States Supreme Court in Nelson and Hill, along with the Eleventh Circuit's interpretation of Hill in Tompkins, it is abundantly clear that actions seeking injunctive relief under section 1983 challenging the method of execution portion of a judgment and sentence are available postconviction processes.
*455 Further, section 3599(g)(1) provides a seamless mechanism for the federal government to compensate attorneys who represent capital defendants in federal court. Therefore, section 1983 actions seeking injunctive relief with regard to method-of-execution challenges will not be pursued at the expense of the State of Florida. Section 27.702(3)(a), Florida Statutes, in fact requires CCRC attorneys to "file motions seeking compensation for representation and reimbursement for expenses pursuant to 18 U.S.C. s. 3006A when providing representation to indigent persons in the federal courts."
Moreover, federal public defenders in Florida have been and continue to be precluded from representing state capital defendants in any postconviction proceedings. As reflected in this record, the current policy of the Eleventh Circuit is that federal public defenders are not authorized to represent those convicted of capital crimes in Florida courts in any proceedings, state or federal.
Our decision today should not be construed broadly. We are interpreting an additional extremely narrow window to allow CCRC attorneys to represent capital defendants in section 1983 challenges if, and only if, they seek injunctive relief to challenge the State's intended method of execution. Nothing in our opinion should be construed to authorize representation by CCRC in any other type of section 1983 claims. Nor should our opinion be construed to authorize CCRC attorneys to represent capital defendants in clemency proceedings. Clemency is an executive power that is completely distinguishable from a challenge in the judicial branch to the legality of a judgment or sentence. Because clemency has absolutely nothing to do with our decision here today, we need not address it.
In a similar manner, our decision today should not be interpreted as declaring any portion of chapter 27 unconstitutional. Darling's right to counsel is statutory in nature, not constitutional. In State v. Kilgore, 976 So.2d 1066, 1068 (Fla.2007), we made clear that
because [capital defendants have] no constitutional right to postconviction counsel, whether CCRC is authorized to represent a death-sentenced individual in a collateral postconviction proceeding attacking the validity of a prior violent felony conviction depends upon the construction and interpretation of the scope of responsibility and authority granted both to CCRC and private registry counsel in chapter 27, Florida Statutes.

Conclusion
We interpret chapter 27 to permit CCRC attorneys to represent a death-sentenced individual in a section 1983 injunctive claim if, and only if, that claim challenges the State's intended of method of execution. Accordingly, we grant Darling relief only to the extent that chapter 27 permits CCRC attorneys to represent capital defendants in claims under section 1983 method-of-execution challenges. For the reasons previously discussed above, however, we affirm the circuit court's denial of other postconviction relief.
It is so ordered.
PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., concurs in part and dissents in part with an opinion, in which QUINCE, J., and POLSTON, J., concur.
CANADY, C.J., concurring in part and dissenting in part.
I concur with the majority opinion to the extent that it affirms the denial of Darling's postconviction motion and partially *456 denies his petition to invoke all writs jurisdiction. But I dissent from the majority's conclusion that Capital Collateral Regional Counsel (CCRC) attorneys are authorized to pursue method-of-execution claims in federal court by way of section 1983 of title 42, United States Code (2006). I would deny all relief sought by Darling.
In reaching its conclusion regarding the scope of CCRC representation, the majority rejects our well-reasoned precedent in State ex rel. Butterworth v. Kenny, 714 So.2d 404 (Fla.1998)precedent which is solidly grounded in the text of sections 27.7001 and 27.702(1), Florida Statutes (2007). Section 27.7001 sets forth the legislative intent to provide "collateral representation" for "collateral legal proceedings to challenge any Florida capital conviction and sentence." Section 27.702(1) provides that CCRC representation is "for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed" on persons under death sentences. The majority's view that CCRC may litigate method-of-execution claims in 1983 actions actions which do not challenge a conviction or sentencecannot be reconciled with these unequivocal statutory provisions.
The justification offered by the majority for rejecting Kenny involves a serious misreading of the basis we actually articulated for that decision. And it involves a serious misreading of the federal law providing counsel for indigent persons under state death sentences. Contrary to the view stated by the majority here, Kenny was based on our conclusion that section 1983 actions raising method-of-execution claims are qualitatively different than traditional postconviction proceedings challenging the validity of convictions and sentences. Contrary to the majority's conclusion that federal law compels the interpretation of state law adopted by the majority, the federal law in question does nothing to compel the State of Florida to do anything.

I. KENNY CORRECTLY HELD THAT CCRC IS PROHIBITED FROM LITIGATING SECTION 1983 METHOD-OF-EXECUTION CLAIMS BECAUSE SUCH CLAIMS DO NOT CHALLENGE THE VALIDITY OF CONVICTIONS AND SENTENCES
The majority asserts that Kenny held habeas proceedings to be outside the scope of the proscription on "civil litigation" under section 27.7001 and to be within CCRC's scope because habeas proceedings are "collateral actions." Majority op. at 453-54. The majority also asserts that Kenny was based upon the "now incorrect assumption" that method-of-execution claims could be brought in federal habeas proceedings. Id. Both assertions flow from a demonstrably incorrect reading of Kennya reading which gives short shrift to the statutory text which was explicated in Kenny and which remains authoritative.
The decision in Kenny turned on two points. First, the Court concluded that "the legislature, in expressing its intent to prohibit CCRC from engaging in civil litigation on behalf of capital defendants, meant only to prohibit CCRC from engaging in civil litigation other than for the purpose of instituting and prosecuting the traditional collateral actions challenging the legality of the judgment and sentence imposed." 714 So.2d at 410 (emphasis added). This conclusion rests on the express provision of section 27.702(1) authorizing CCRC to participate in "collateral actions" "for the sole purpose of ... challenging the judgment and sentence imposed against" a CCRC client. Second, the Court concluded that "[a] federal civil rights action filed under section 1983 for a declaratory judgment or for injunctive relief is a civil action that does not test the *457 legality of the conviction and sentence." Id. (emphasis added). This conclusion rests on the essential nature of the relief sought in a section 1983 action.
Based on these two points, the Court articulated its holding on the issue presented: "Because we agree that the federal civil rights action is not a challenge by CCRC to the legality of the capital defendants' judgments and sentences, we find that CCRC has no authority to represent the defendants in that action." Id. (emphasis added). The holding in Kenny thus was predicated on the nature of the relief sought in a 1983 action raising a method-of-execution claim.
The reasoning of the Kenny Court was crystal clear: CCRC was precluded from participating in section 1983 method-of-execution challenges because such proceedings do not challenge the conviction or sentence and thus are unlike traditional postconviction claims which CCRC was established to litigate. Nothing in Kenny suggests that CCRC could properly participate in all legal proceedings that could broadly be considered "collateral" to a death sentence. Kenny recognizes that such a broad reading of the scope afforded CCRC cannot be reconciled with the plain meaning of section 27.702(1)'s provision that CCRC representation of its clients is "for the sole purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person[s]." (Emphasis added.)
The decision in Kenny interpreting the relevant provisions of chapter 27 did not rest on any assumption by the Court about the proper procedural vehicle for mounting a method-of-execution challenge in federal court. The Kenny Court certainly said nothing to suggest that federal law would permit or require the litigation of such claims in habeas proceedings. Indeed, in its discussion of why a method-of-execution claim does not constitute a challenge to the validity of a conviction or sentence, the Courtquoting the federal district court decision in Jones v. McAndrew, 996 F.Supp. 1439, 1443 (N.D.Fla.1998)indicated that a method-of-execution challenge "is far more analogous to the kind of claim properly (and routinely) brought under § 1983 than to a habeas action" because such a challenge "is not a challenge to any plaintiff's conviction or to the sentence of death." Kenny, 714 So.2d at 410. So there is no justification for the majority's conclusion that Kenny must be revisited because the Kenny Court assumed that the door was open in federal habeas proceedings for method-of-execution challenges.
The majority also attempts to avoid the force of Kenny's reasoning by making the unexplained assertion that method-of-execution challenges are an attack on "an integral part of the judgment and sentence." Majority op. at 446. There are two problems with this assertion.
First, it is a bare assertion without any support in our caselaw. We have never characterized a method-of-execution challenge as an attack on "an integral part of the judgment and sentence" imposed in a death case. Second, if a method-of-execution claim is deemed to be an attack on a judgment or sentence, then federal caselaw precludes its determination outside the habeas context. Claims challenging a conviction or sentence "fall within the `core' of habeas corpus and are thus not cognizable when brought pursuant to § 1983." Nelson v. Campbell, 541 U.S. 637, 643, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004).
The majority is thus on the horns of a dilemma. A method-of-execution claim is within CCRC's scope only if it is a challenge to the validity of a sentence. But if a method-of-execution claim is a challenge *458 to the validity of a sentence, it is not cognizable in a section 1983 action.
In reality, of course, there is no dilemma here. The law is clear that a method-of-execution claim like the claim Darling seeks to bring is not an attack on the validity of the sentence of death: "A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the `fact' or `validity' of the sentence itselfby simply altering its method of execution, the State can go forward with the sentence." Nelson, 541 U.S. at 644, 124 S.Ct. 2117. Florida law specifically provides for carrying out death sentences "by any constitutional method of execution" if execution by electrocution or lethal injection is held to be unconstitutional. § 922.105(3), Fla. Stat. (2009). Similarly, if a particular protocol for execution by lethal injection is invalidated, the State can employ another lethal injection protocol and proceed with execution.
The Supreme Court's recognition of circumstances where a broadly framed "constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself" provides cold comfort for the majority's position here. Majority op. at 451 (quoting Nelson, 541 U.S. at 644, 124 S.Ct. 2117). There is no suggestion that Darling seeks to litigate such a broadly framed challenge; his focus, instead, is on "lethal injection as currently administered in Florida." The Florida statutory scheme would in any event not be amenable to such a challenge. But if it were and Darling sought to challenge the validity of his sentence in that way, he could not assert that claima claim falling within the "core" of habeas corpusin a section 1983 proceeding. Both Nelson and Hill make clear that a challenge to the validity of a death sentence cannot be litigated in a section 1983 action.
The majority is correct that in Diaz v. State, 945 So.2d 1136 (Fla.2006), we stated that a method-of-execution challenge could be brought in a federal habeas proceeding despite the United States Supreme Court's holding in Hill v. McDonough, 547 U.S. 573, 126 S.Ct. 2096, 165 L.Ed.2d 44 (2006). But the discussion in Diaz on that question was quite beside the point on the issue actually raised in Diazthe constitutionality of section 27.702's limitation on CCRC representation. When and how a particular claim can be brought in federal court has no bearing on whether a person under sentence of death has a due-process right to a state-provided lawyer to pursue the claim after the conviction and death sentence are final. The majority itself recognizes that there is no such due-process right. See majority op. at 455 (quoting State v. Kilgore, 976 So.2d 1066, 1068 (Fla.2007)). And the discussion in Diaz regarding the viability of method-of-execution challenges in federal habeas proceedings played no part in the Court's reasoning concerning the statutorily authorized scope of CCRC representation. In sum, nothing said in Diaz calls into question the reasoning of Kenny on the issue of statutory interpretation regarding the scope of CCRC representation.

II. FEDERAL LAW IMPOSES NO OBLIGATION ON CCRC TO LITIGATE SECTION 1983 METHOD-OF-EXECUTION CLAIMS
The majority attempts to buttress its view concerning the need to recede from Kenny by asserting that we are "compelled by federal law" to permit CCRC representation in section 1983 actions raising method-of-execution challenges. Majority op. at 454. The majority reasons that section 1983 method-of-execution challenges *459 are covered by section 3599, of title 18, United States Code (2006), and that section 3599 requires CCRC counsel appointed under its provisions to represent their clients in any proceeding covered by section 3599. This line of reasoning is flawed in two fundamental respects.
First, despite the majority's assertion that it is "abundantly clear" that section 1983 method-of-execution challenges are covered by section 3599, majority op. at 454, the majority cites no authority which actually supports that assertion. The availability of counsel under section 3599 was not at issue in either the United States Supreme Court decisionsHill and Nelsonor the Eleventh Circuit decisionTompkins v. Secretary, Department of Corrections, 557 F.3d 1257 (11th Cir.), cert. denied, ___ U.S. ___, 129 S.Ct. 1305, 173 L.Ed.2d 482 (2009)-relied on by the majority as support for its assertion regarding the availability of the counsel under section 3599. In any event, we need not decide whether section 1983 method-of-execution challenges are covered by section 3599.
This is so because even if section 3599 covers such challenges, it does not impose any "mandatory" requirements on the State of Florida or the lawyers it employs through CCRCwhich brings us to the second flaw in the majority's reasoning. That is, the majority reads requirements into the federal statute that are not present in the statute. To begin with, it is important to understand that the federal statute does not require that any state provide counsel for appointment under the statute. Nor does the statute provide that a lawyer appointed under its provisions is obligated to participate in all proceedings covered by the statute. On the contrary, section 3599(e) specifically provides that counsel appointed under the statute may be "replaced by similarly qualified counsel upon the attorney's own motion." (Emphasis added.) Nothing in the federal statute is inconsistent with Florida's statutory limitations on CCRC representation. And nothing in the federal statute indicates that Congress sought to dragoon lawyers employed by a state for purposes forbidden by the law of that state.
Serious constitutional concerns would, of course, be raised by any such attempt by Congress to impress state employees into service to further the policy objectives of the Congress. See Printz v. United States, 521 U.S. 898, 928, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) ("It is an essential attribute of the States' retained sovereignty that they remain independent and autonomous within their proper sphere of authority. It is no more compatible with this independence and autonomy that their officers be "dragooned" ... into administering federal law, than it would be compatible with the independence and autonomy of the United States that its officers be impressed into service for the execution of state laws.") (citation omitted). Here, the constitutional concerns are raised not by the federal statute itself but by the majority's misreading of the federal statute.
The reasoning underlying the majority's conclusion regarding the "mandatory" nature of the federal statute necessarily has implications beyond the context of section 1983 method-of-execution claims. Most saliently, the majority's reasoning on this point would require that CCRC participate in clemency proceedings, even though section 27.7001 expressly provides that the "intent of the Legislature" is that "collateral representation shall not include representation during ... proceedings commenced under Chapter 940"the chapter governing clemency proceedings. Harbison v. Bell, ___ U.S. ___, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009), held that section 3599 covers state clemency proceedings. *460 Given Harbison's holding that such proceedings are covered by section 3599, the reasoning of the majority here regarding the "mandatory" nature of the federal statute compels the conclusion that CCRC must participate in state clemency proceedings. This highlights how the majority's approach gives short shrift to the limitations placed by the Legislature on CCRC.

III. CONCLUSION
Under the doctrine of stare decisis, this Court is obligated to take our precedents seriously. We should not overturn a precedent without a strong justification for doing so. But here the grounds relied on by the majority to justify the decision to reject Kenny are demonstrably mistaken. Under the doctrine of the separation of powers, this Court is obligated to take the text of statutes seriously. We should not impose an interpretation on a statute that cannot be reconciled with the statutory text. But here the interpretation of sections 27.702(1) and 27.7001 adopted by the majority is at odds with the clear meaning of the statutory text. For these reasons, I dissent from the majority's decision to require that CCRC represent Darling in the litigation of a section 1983 method-of-execution claim in federal court.[3]
QUINCE and POLSTON, JJ., concur.
NOTES
[1] On appeal, Darling has abandoned his fourth claim based on recent decisions from this Court holding that the ABA report is not newly discovered evidence and that, even if it were, the report does not compel the conclusion that Florida's death-penalty system is unconstitutional. See, e.g., Tompkins v. State, 994 So.2d 1072, 1082-83 (Fla.2008) (citing Power v. State, 992 So.2d 218, 222-23 (Fla. 2008)); Rolling v. State, 944 So.2d 176, 181 (Fla.2006) (citing Rutherford v. State, 940 So.2d 1112, 1117, 1118 (Fla.2006)).
[2] Henyard v. State, 992 So.2d 120 (Fla.2008).
[3] I express no view concerning whether issues related to the scope of CCRC's representation are cognizable either under Florida Rule of Criminal Procedure 3.851 or in a petition to invoke this Court's all writs jurisdiction.