PER CURIAM.
John Troy appeals an order of the circuit court summarily denying his first postconviction motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal *831 Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the circuit court’s order denying Troy’s motion for postconviction relief.
OVERVIEW
Troy, who was thirty-one years old at the time of the crimes, was convicted and sentenced to death for the 2001 first-degree murder of Bonnie Carroll in Sarasota, Florida. Troy was also convicted of armed burglary, armed robbery, and attempted sexual battery with a weapon of Carroll, and armed burglary, aggravated battery, armed kidnapping, and armed robbery of Traci Burchette. We affirmed Troy’s convictions and sentences on direct appeal. See Troy v. State, 948 So.2d 635 (Fla.2006). Following a Huff[1] hearing, the circuit court summarily denied Troy’s motion for postconviction relief. Troy now challenges the circuit court’s postconviction order and raises various claims. We begin our opinion by examining the relevant facts of this case. We then turn to the claims raised in Troy’s 3.851 motion for postconviction relief.
FACTUAL AND PROCEDURAL BACKGROUND
The facts of this case, as set forth in Troy’s direct appeal, are summarized here. At approximately 5:30 p.m. on September 12, 2001, Debbie Ortiz found the nude, dead body of her twenty-year-old daughter, Bonnie Carroll, at Carroll’s home in the Timberchase Apartments in Sarasota. Associate medical examiner Dr. Michael Hunter determined that Carroll was murdered around midnight on September 12. Dr. Hunter observed blunt force impact injuries around Carroll’s face, a cloth tied around her neck, large incised wounds to the neck, and stab wounds to the front of her body. He discovered a piece of cloth inside Carroll’s mouth during the autopsy, and determined that she was alive when the cloth was inserted. He also discovered petechial- hemorrhages in her eyes which possibly, albeit not conclusively, indicated strangulation. Although no semen was identified, Dr. Hunter testified to injuries and other factors consistent with someone attempting to sexually batter Carroll before she was killed. Further evidence revealed that a knife blade was broken off within Carroll’s body. The corresponding bladeless knife handle, which contained the blood of the victim and of Troy, was recovered from Carroll’s bathroom counter. A steak knife that was recovered at the scene also contained Carroll’s blood. It was determined that Carroll sustained fifty-four injuries to her body.
Troy, who also resided at Timberchase Apartments, had been released from prison about five weeks before Carroll’s murder. He had served a sentence for armed robbery and was placed on probation for two years. His conditional release required that he submit to regularly scheduled'drug testing. Troy admitted to his probation officer that he would fail his first scheduled drug test and consequently rescheduled the test for September 11, 2001. Troy tested positive for cocaine that day and was informed by his probation officer that he would soon be reincarcerated for violating his probation.
Troy went home after failing his drug test, argued with his girlfriend, Marilyn Brooks, and left to visit Melanie Kozak. His girlfriend testified that he left their apartment with a kitchen knife and did not return. Between September 11 and September 12, 2001, Troy visited Kozak three times before Carroll’s murder and one time afterward, and the two ingested co *832 caine together during each visit. Troy was also involved in an incident with a neighbor on the evening of Carroll’s murder. When police arrived at Troy’s apartment to investigate that incident, Troy was not home.
Carroll’s death occurred some time between Troy’s incident with his neighbor and a 2 a.m. visit with Kozak. Following Carroll’s death, Troy again ingested cocaine at Kozak’s home, then drove around in Carroll’s vehicle and stopped to visit Traci Burchette, a psychiatric nurse and friend of his mother. Troy picked up a two-by-four board that was lying in Bur-chette’s backyard and knocked on her front door at about 6:30 a.m. When she came to the door, Troy told her that his vehicle had broken down and he needed to use the telephone. At some point after she invited him in, Troy attacked Bur-chette with the two-by-four board. She lost fingernails on both hands and suffered a skull fracture and broken knuckles. Troy bound and gagged Burchette, took her ATM card and the keys to her vehicle, and left in her vehicle.
Troy attempted to use Burchette’s ATM card at a bank in Arcadia and then headed south on Interstate 75 toward Naples. In the meantime, Burchette managed to call the police and when they arrived, she provided them with a description of Troy and her vehicle. Troy and a female passenger were stopped by local police in Naples midafternoon on September 12. Police located the two-by-four board used in Bur-chette’s attack along the highway near Fort Myers.
Troy was wearing tennis shoes, blue jeans, a T-shirt, and a baseball cap when he was arrested. The following DNA evidence linking Troy to the crimes was stipulated: the shoes contained Carroll’s blood; the jeans contained the blood of Carroll and Burchette; and the T-shirt tested positive for Burchette’s blood. Additionally, a mixture of Troy’s DNA was found on material removed from Carroll’s fingernails. One piece of broken glass found lying on Carroll’s bra in her bedroom contained her blood. Another piece of broken glass found near Carroll’s body tested positive for Troy’s blood. A match of Troy’s fingerprint was identified on a glass found on Carroll’s kitchen counter.
The jury found Troy guilty of first-degree murder and all the other charges, and the case proceeded to the penalty phase where the State and defense presented testimony. Following the penalty phase, the jury rendered its advisory sentence. The judge followed the jury’s eleven-to-one recommendation and sentenced Troy to death based on four aggravating factors,[2] two statutory mitigating factors, and fifteen nonstatutory mitigating factors.[3] *833 Troy appealed, raising seven claims, and this Court affirmed. Troy, 948 So.2d 635.
Pursuant to rule 3.851 of the Florida Rules of Criminal Procedure, Troy filed his initial postconviction motion, which raised numerous claims. He sought an evidentiary hearing on several claims, and the circuit court held a Huff hearing to determine whether the claims raised in his motion required an evidentiary hearing. The court issued an order denying all of Troy’s postconviction claims without a hearing, and this appeal followed. Troy now argues that the circuit court erred in denying relief on each of the claims raised in his postconviction motion.
THE ISSUES ON APPEAL
Troy raises twelve issues in his appeal of the circuit court’s denial of postconviction relief. He contends that (1) trial counsel was ineffective for failing to prepare a penalty phase mitigation witness; (2) trial counsel was ineffective for failing to investigate, question and remove a juror from the jury panel; (3) trial counsel was ineffective for failing to properly argue the applicability of the statutory age mitigator; (4) Florida’s lethal injection protocols are unconstitutional; (5) section 945.10, Florida Statutes (2008), is unconstitutional; (6) section 27.702, Florida Statutes (2008), is unconstitutional; (7) rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar is unconstitutional; (8) Florida’s jury instructions violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (9) Troy’s execution will be cruel and unusual because he may be incompetent at the time of his execution; (10) Florida’s death penalty statute as applied to him is unconstitutional; (11) Florida’s death sentence statute is unconstitutional for failing to prevent the arbitrary and capricious imposition of the death penalty; and (12) the cumulative effect of errors deprived Troy of a fair trial. He contends that an evidentiary hearing was warranted on the first five claims. We turn now to address ¡ each of these claims. As explained below, we conclude that Troy is entitled to relief only to the extent that chapter 27, Florida Statutes (2010), permits Capital Collateral Regional Counsel to represent capital defendants in mode-of-execution claims under 42 U.S.C. § 1983 (2006).
Summary Denial of Ineffective Assistance of Counsel Claims
Troy claims that the postconviction court erred in summarily denying his various claims of ineffective assistance of counsel. We begin this discussion with the applicable standard of review.
Pursuant to Florida Rule of Criminal Procedure 3.851, a circuit court must hold an evidentiary hearing on an initial motion for postconviction relief whenever the mov-ant makes a facially sufficient claim that requires a factual determination. See Hurst v. State, 18 So.3d 975, 997 (Fla.2009) (citing Gonzalez v. State, 990 So.2d 1017, 1024 (Fla.2008)). To the extent there is any question as to whether the movant has made a facially sufficient claim requiring a factual determination, the court must presume that an evidentiary hearing is required. Id. (citing Booker v. State, 969 So.2d 186, 195 (Fla.2007)).
*834 “The decision of whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on the written materials before the court, and the ruling of the postconviction trial court on that issue is tantamount to a pure question of'law subject to de novo review.” Davis v. State, 26 So.3d 519, 526 (Fla.2009), cert. denied, — U.S. -, 130 S.Ct. 3509, 177 L.Ed.2d 1097 (2010). Therefore, when reviewing the summary denial of claims raised in an initial postconviction motion below, this Court accepts the movant’s factual allegations as true to the extent that they are not refuted by the record. See Hurst, 18 So.3d at 997 (citing Gonzalez, 990 So.2d at 1024). A court may summarily deny a postconviction claim when the claim is legally insufficient, procedurally barred, or refuted by the record. See Owen v. State, 986 So.2d 534, 543 (Fla.2008). “To uphold the trial court’s summary denial of claims raised in an initial postconviction motion, the record must conclusively demonstrate that the defendant is not entitled to relief.” Hutchinson v. State, 17 So.3d 696, 700 (Fla.2009).
The facial sufficiency of an ineffective assistance of counsel claim is determined by applying the two-pronged test of deficiency and prejudice set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Duest v. State, 12 So.3d 734, 747 (Fla.2009) (citing Spera v. State, 971 So.2d 754, 758 (Fla.2007)). To successfully prove a claim of ineffective assistance of counsel, both prongs of the Strickland test must be satisfied as follows:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Ferrell v. State, 29 So.3d 959, 969 (Fla.2010)(quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)). Because ineffective assistance of counsel claims present mixed questions of fact and law, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent substantial evidence, but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004) (citing Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999)). With the applicable standard of review in mind, we turn now to address Troy’s first postcon-viction claim.[4]

1. Failure to Prepare Mitigation Witness

Troy first claims that counsel was ineffective for failing to prepare Department of Corrections official Michael Gale-more as a penalty-phase mitigation witness. He points to this Court’s opinion on direct appeal where we considered wheth *835 er the trial court erred in excluding Gale-more’s proffered testimony. Troy, 948 So.2d at 650. There, we concluded that the trial court did not abuse its discretion in excluding this testimony, noting, inter alia, that “Galemore had never met Troy, nor had he ever witnessed Troy during one of his periods of incarceration, making his potential assessment regarding Troy’s possible prison experience entirely speculative.” Troy, 948 So.2d at 651. Troy now contends that trial counsel was ineffective for failing to properly prepare Galemore with personal knowledge of Troy in order to make it possible for him testify about the defendant’s prison experience should he be sentenced to life imprisonment without the possibility of parole. According to Troy, competent counsel would have arranged for Galemore to meet and interview the defendant; review the defendant’s prior prison records; and review the penalty phase testimony of the eight witnesses who testified to Troy’s prison behavior. Had Galemore acquired such personal knowledge, Troy maintains, he would have been able to draw upon Troy’s past experience to project what his future prison experience would be while serving a life sentence without the possibility of parole. He contends further that an eviden-tiary hearing on the matter was warrant-, ed. We disagree.
First, a defendant’s claim that he was denied effective assistance of counsel because of counsel’s failure to present mitigation evidence will not be sustained where the jury was aware of most aspects of the mitigation evidence that the defendant claims should have been presented. See Van Poyck v. State, 694 So.2d 686, 692-93 (Fla.1997) (holding that trial counsel was not deficient in the presentation of defendant’s life history during the penalty phase because the jury was aware of most aspects of the defendant’s life that the defendant argued should have been presented). We conclude that in this case the jury was aware of many aspects of parole ineligibility and possible prison experience that Troy now contends should have been presented.
Troy maintains that while there was evidence about his past prison behavior, testimony from a disinterested witness such as Galemore could have addressed his probable future conduct should he receive a life sentence without the possibility of parole, in accord with the U.S. Supreme Court’s decision in Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), and this Court’s decision in Valle v. State, 502 So.2d 1225 (Fla.1987). However, the record reflects that several witnesses testified as to how Troy could make positive contributions should he be sentenced to life imprisonment without the possibility of parole. While much of the testimony on the defendant’s probable future conduct came from close family members, the record reflects that other witnesses testified to Troy’s future prison behavior. We also note that the trial court addressed parole ineligibility during the penalty phase, instructing the jury that gain time does not apply when a defendant is sentenced to life in prison without the possibility of parole.
Second, we have held that a defendant’s claim that he was denied effective assistance of counsel because of counsel’s failure to present witnesses in mitigation will not be sustained where the sentencing judge was aware of many of the mitigating factors that the defendant claims on appeal should have been presented. See Lightbourne v. State, 471 So.2d 27, 28 (Fla.1985) (holding that counsel was not ineffective for failing to present mitigating evidence at sentencing because the trial record clearly indicated that the sentencing judge was aware of many of the mitigators that counsel was presenting to this Court on *836 appeal). In this case, the record reflects that the sentencing judge considered Troy’s “value to others inside of prison, the contributions he can make if sentenced to life in confinement, and his potential for rehabilitation” as a mitigating circumstance and accorded- it little weight. Because both the sentencing judge and the jury were aware of evidence relating to the defendant’s parole ineligibility, counsel was not deficient for failing to prepare Gale-more as a mitigation witness as Troy maintains.
Additionally, trial counsel’s alleged deficiency in failing to prepare Galemore as a mitigation witness to testify to Troy’s possible prison experience did not prejudice his proceedings. “Penalty phase prejudice under the Strickland standard is measured by whether the error of trial counsel undermines this Court’s confidence in the sentence of death when viewed in the context of the penalty' phase evidence and the mitigators and aggravators found by the trial court.” Stewart v. State, 37 So.3d 243, 253 (Fla.2010) (quoting Hurst v. State, 18 So.3d 975, 1013 (Fla.2009)). That standard does not “require a defendant to show ‘that counsel’s deficient conduct more likely than not altered the outcome’ of his penalty proceeding, but rather that he establish ‘a probability sufficient to undermine confidence in [that] outcome.’ ” Porter v. McCollum, — U.S. -, 130 S.Ct. 447, 455-56, 175 L.Ed.2d 398 (2009) (quoting Strickland, 466 U.S. at 693-94, 104 S.Ct. 2052). Viewed in the context of this case, we conclude that the absence of further testimony presented to the jury discussing Troy’s' possible prison experience does not establish a probability sufficient to undermine our confidence in his sentence of death. Because the record conclusively demonstrates that Troy is not entitled to relief, we uphold the lower court’s summary denial of this ineffective assistance of counsel claim. See Hutchinson, 17 So.3d at 700.

2. Failure to Question and Remove Juror

Troy next raises two subclaims alleging trial counsel’s ineffective assistance during voir dire, which, in his view, warranted an evidentiary hearing. First, Troy claims counsel was deficient for failing to question juror Fred Hamblin about his alleged undisclosed connection with the family of the murder victim, Carroll. Second, he asserts that counsel was ineffective for not moving to strike juror Hamblin from the jury panel. He also- alleges other juror misconduct in this case. Each subclaim is addressed below.
Troy first contends that counsel did not adequately question juror Hamblin during voir dire about whether he knew the murder victim’s father, Robert Bob Ortiz. Troy asserts that trial counsel should have discovered a connection between the two men because both were members of the same local chamber of commerce and both lived and worked in the same community. Troy’s claim that there is a substantial likelihood that juror Hamblin knew the victim’s father is refuted by the record. The voir dire record reveals that the trial judge questioned prospective jurors about whether they knew the victim or the victim’s family. It is true that when the court asked whether any prospective jurors knew the victim or the victim’s family, the court provided the victim’s maiden name, Ortiz, as the middle name; and it might have been more prudent for the court to have read aloud to prospective jurors the names of the victim’s immediate family members. However, it is reasonable to conclude that had Hamblin known Carroll’s family, as Troy maintains, Hamblin would have realized the familial relation between the victim *837 and Ortiz. Moreover, the court prefaced the question with the following: “If you are like most people, you may recognize a name later on. It may ring a bell with you. If so, bring it up.” Troy also maintains that there was a likelihood that Ham-blin recognized Ortiz as the victim’s father attended the trial proceedings and testified during the penalty phase. This assertion is entirely speculative. At no point during the course of the proceedings did Hamblin indicate that he knew the victim’s family.
Any suggestion on Troy’s behalf that juror Hamblin concealed information from the court during voir dire is unsupported by the record. The record reflects that Hamblin was candid and forthcoming in his responses during voir dire and disclosed information of which he believed the court should be aware. Additionally, we note that although an evidentiary hearing was not granted on the matter, the court did conduct an interview with juror Ham-blin in open court. At this interview, both Hamblin and Ortiz testified that they did not know one another. For these reasons, we deny relief on this subclaim.
In his second subclaim, Troy asserts that trial counsel was deficient for failing to strike juror Hamblin from the jury panel, and that the postconviction court erred in failing to address this sub-claim. We disagree. We conclude that . even if the court did not address the issue, it is unnecessary to remand this claim for a ruling because the claim is refuted by the record.
Troy claims that counsel was deficient for not challenging juror Hamblin dui’ing voir dire. He claims further that the allegedly hostile nature of the victim’s father provided an additional basis for challenging juror Hamblin during jury selection. Counsel’s alleged failure to exercise a cause challenge or a peremptory challenge to strike a prospective juror is subject to the prejudice standard set forth in Carratelli v. State, 961 So.2d 312, 324 (Fla.2007). See Owen, 986 So.2d at 549-50. To be entitled to relief, the defendant must establish that a juror was actually biased. Carratelli, 961 So.2d at 324. We explained in Carratelli:
A juror is competent if he or she “can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court.” Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial— i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record.
Carratelli, 961 So.2d at 324 (citations omitted) (quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984)).
We conclude that the record in this case refutes any claim of actual bias. The voir dire record reveals that Hamblin came forward when asked whether he had come across any information concerning the case. Hamblin indicated he had not formed any impression about the case and had no outside knowledge about the case except for a possible newspaper headline he may have seen the day before jury selection began. Hamblin also indicated he was open to hearing the facts and circumstances of the case and that he was “willing to serve and give [the court] the benefit of [his] opinion and [his] verdict.” The fact that juror Hamblin and the victim’s father, Ortiz, shared an affiliation with the same professional organization and lived and worked in the same community does not establish actual bias. Moreover, we conclude that the allegedly hostile nature of Ortiz befoi'e and throughout trial, which Troy maintains was apparent *838 when Ortiz testified during the penalty-phase, similarly fails to establish Ham-blin’s actual bias. Because the record refutes any claim of actual bias that would have prevented juror Hamblin from serving as an impartial juror, Troy is not entitled to relief.
With regard to Troy’s allegations of other juror misconduct, we conclude that Troy is procedurally barred from raising a claim that the jury was repeatedly compromised in this case. “[A]ny substantive claim pertaining to juror misconduct is procedurally barred as it could have and should have been raised on direct appeal.” Elledge v. State, 911 So.2d 57, 77 n. 27 (Fla.2005); see also Knight v. State, 923 So.2d 387, 391 n. 6 (Fla.2005) (holding as procedurally barred an initial postconviction claim alleging juror misconduct). A defendant may not attempt to circumvent the procedural bar to his claims by raising conclusory allegations of ineffective assistance of counsel. See Miller v. State, 926 So.2d 1243, 1260-61 (Fla.2006) (citing Thompson v. State, 796 So.2d 511, 515 n. 5 (Fla.2001)). Troy’s claim that trial counsel “did nothing ... to discover how much the demonstrative sympathy of a juror for the victim’s family intruded into the panel as a whole” is an attempt to raise an issue of alleged juror misconduct as an ineffective assistance of counsel claim. We thus deny relief on this claim.

3. Failure to Argue Statutory Age Mitigator

In his third claim, Troy contends that he was entitled to an evidentiary hearing on the issue of whether trial counsel was ineffective for failing to adequately request the jury instruction on the statutory age mitigator and failing to present evidence of the mitigator to the court in the sentencing memorandum or the Spencer[5] hearing. Troy concedes that there was evidence in the record to support the statutory age mitigator, but claims that the evidence was not argued effectively when trial counsel requested the jury instruction. Troy contends that competent counsel would have linked his age with some other characteristic of the defendant or the crime such as immaturity. Troy’s claim lacks merit.
We have previously concluded that counsel’s performance is not deficient where the jury is aware of most of the evidence that the defendant claims should have been presented. See Van Poyck, 694 So.2d at 692. Although trial counsel did not rebut the State’s argument with regard to the jury instruction on the statutory age mitigator and did not present additional evidence regarding the applicability of the mitigator before Troy was sentenced at his Spencer hearing, we observed in our opinion on direct appeal that evidence bearing on the defendant’s emotional maturity was presented to the jury. Troy, 948 So.2d at 652. This evidence included “the fact that the crime was committed while Troy was under extreme mental or emotional disturbance, that Troy’s capacity to appreciate the criminality of his conduct was impaired, that his family background was dysfunctional, and that he had a long history of severe substance abuse and mental and emotional problems.” Id[6] We also noted in our opinion that claims that “Troy has functioned throughout his life at an adolescent level [were] borne out by the record.” Id. at 651. As we observed on direct appeal, Troy “was not deprived of *839 the opportunity to assert his emotional immaturity.” Id. at 652. Because evidence bearing on the defendant’s emotional maturity was presented to the jury, counsel’s performance was not deficient. We conclude further that there is no “reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiencies substantially impair confidence in the outcome of the proceedings.” Floyd v. State, 18 So.3d 432, 453 (Fla.2009) (quoting Lynch v. State, 2 So.3d 47, 70 (Fla.2008)). We therefore deny relief on this claim.
Constitutional Challenges

L Florida’s Lethal Injection Protocols

In his fourth claim, Troy criticizes Florida’s current lethal injection protocols and contends that the lower court should have granted an evidentiary hearing to address the potential issue of his venous access, to hear evidence on the training, experience and identity of the actual executioners, and to hear the testimony of veterinarians and others experienced in euthanasia to determine whether a reasonably feasible alternative exists to Florida’s current method of execution.
We reject Troy’s claim that an evidentiary hearing was required to determine whether a reasonably feasible alternative to Florida’s current lethal injection protocol exists. Much like the petitioners in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), Troy proposes that Florida adopt a single barbiturate or other alternative that does not include a paralytic. The plurality in Baze rejected the barbiturate-only protocol, and concluded:
A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State’s lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives. A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard.
Id. at 61, 128 S.Ct. 1520. Because Florida employs the same three-drug combination under similar protocols as those examined in Baze, any suggestion on Troy’s part that the State’s failure to adopt an alternative constitutes cruel and unusual punishment is without merit. Additionally, we stated in Lightbourne v. McCollum, 969 So.2d 326 (Fla.2007):
Determining the specific methodology .and the chemicals to be used are matters left to the DOC and the executive branch, and this Court cannot interfere with the DOC’s decisions in these matters unless the petitioner shows that there are inherent deficiencies that rise to an Eighth Amendment violation.
Id. at 352. Troy has failed to demonstrate any “inherent deficiencies that rise to an Eighth Amendment violation.” Id. Instead, he reiterates many of the same alleged deficiencies in Florida’s lethal injection protocols that were presented in Lightboume and subsequent cases. The deficiencies he alleges in the current protocols include that the protocols fail to require adequate and reliable background screening of the execution team and other personnel; fail to require that the execution team and the medical personnel who perform lethal injection have appropriate training, credentials, and supervision; fail to require adequate record-keeping and an adequate review and certification process; fail to require a proper execution facility and method; and fail to require adequate standards to manage complications inherent in the procedure.
*840 We have rejected several claims identical to those Troy now raises. See Burns v. State, 3 So.3d 316 (table), No. SC08-192 (Fla. Jan. 29, 2009); Lightbourne, 969 So.2d 326; Tompkins v. State, 994 So.2d 1072, 1082 (Fla.2008). As to the remaining claims that were not duplicated in Lightb-oume, we conclude that Troy is not entitled to relief under the analogous and comprehensive analysis we undertook in Lightboume. “A claim that the protocol can be improved and the potential risks of error reduced can always be made.” Lightbourne, 969 So.2d at 351. However, “this Court’s role is not to micromanage the executive branch in fulfilling its own duties relating to executions.” Id. Therefore, an evidentiary hearing was not warranted on Troy’s proposed barbiturate-only protocol. For similar reasons, we also reject Troy’s contention that an evi-dentiary hearing was warranted on the training, experience, and identity of the execution team.
We also hold that any suggestion on Troy’s part that Lightboume and related decisions should be reconsidered in light of the U.S. Supreme Court’s decision in Baze has been previously rejected by this Court. See Ventura v. State, 2 So.3d 194, 198-99 (Fla.), cert. denied, — U.S. -, 129 S.Ct. 2839, 174 L.Ed.2d 562 (2009). Our extensive analysis in Lightboume reasoned that Florida’s current lethal injection protocol passes constitutional muster under any of the risk-based standards for evaluating the constitutionality of state execution protocols considered by the Baze Court. Ventura, 2 So.3d at 200. Further, “we have rejected contentions that Baze set a different or higher standard for lethal injection claims than Lightboume.” Tompkins, 994 So.2d at 1081.
Lastly, Troy’s claim that he was entitled to an evidentiary hearing to address any potential issues concerning venous access must also fail. Conclusory allegations are not sufficient to establish a legally sufficient claim for postconviction relief. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). Troy failed to allege a medical condition that would contribute to difficulty gaining venous access and he did not allege that such conditions exist. See id.; see also Spencer v. State, 23 So.3d 712 (table), No. SC08-2270 (Fla. Nov. 18, 2009). Because this claim is legally insufficient, Troy is not entitled to relief.

5. Section 915.10

Troy next asserts that the post-conviction court erred in denying his request for an evidentiary hearing on the constitutionality of section 945.10, Florida Statutes. He contends that the statute, which exempts the disclosure of the identity of an executioner from public records, is unconstitutional in part because it precludes him from determining the adequacy of the execution team’s qualifications and training. He advances that the safety of executioners does not justify the public records exemption and that the presumption that members of the executive branch will properly perform their duties in carrying out an execution, as recognized in Provenzano v. State, 761 So.2d 1097, 1099 (2000), is no longer valid. For the reasons explained below, we deny relief on this claim.
Rule 3.851 provides that an evidentiary hearing is required only on claims listed by the defendant as requiring a factual determination. Fla. R.Crim. P. 3.851(f)(5)(A)(i). Here, Troy bases his contentions specifically on the issues that arose out of the execution of Florida inmate Angel Diaz, the failed execution of Ohio inmate Rommel Broom, the botched executions of inmates in other states, the Report of the Governor’s Commission on the Administration of Lethal Injection in Florida, and the evidentiary-hearing testimony considered *841 by the circuit court in the Lightboume proceedings. Nothing in this claim required a factual determination. Furthermore, we have repeatedly rejected challenges to the constitutionality of section 945.10 on the merits. See Darling v. State, 45 So.3d 444, 448 (Fla.2010) (citing Ventura, 2 So.3d at 197 n. 3); see also Henyard v. State, 992 So.2d 120, 130 (Fla.2008) (“We previously found section 945.10 facially constitutional and decline to recede from our decision now.”).-
Additionally, even if the Court were willing to recede from this precedent, as of this date the Governor has not signed a death warrant for Troy; consequently, even if ordered to do so, the Department of Corrections could not state with any certainty who Troy’s eventual executioners would be. Cf. Lightbourne, 969 So.2d at 343 (“[TJhis Court [previously] stated that there is a presumption that the members of the executive branch will properly perform them duties in carrying out an execution.”) (alterations in original) (quoting Provenzano, 761 So.2d at 1099). In light of our repeated rejection of challenges of this nature, the lower court did not err in denying an evidentiary hearing on this issue. Accordingly, we deny relief on this claim.

6. Section 27.702

Troy next asserts that section 27.702, Florida Statutes, as interpreted by this Court, is unconstitutional facially and as applied because it precludes Capital Collateral Regional Counsel (“CCRC”) from filing an action in federal court pursuant to 42 U.S.C. § 1983 to challenge Florida’s lethal injection procedures and lethal injection as a mode of execution. We have previously interpreted sections 27.7001 and 27.702, Florida Statutes (2008), to prohibit CCRC from representing capital defendants in section 1983 mode-of-execution challenges. See State ex rel. Butterworth v. Kenny, 714 So.2d 404 (Fla.1998). However, due to recent changes in federal law, we have since receded from our prior interpretation of chapter 27. See Darling, 45 So.3d at 453. CCRC attorneys may now represent capital defendants in section 1983 challenges if they seek injunctive relief to challenge Florida’s intended mode of execution. Id. Accordingly, Troy is entitled to relief only to the extent that chapter 27 permits CCRC attorneys to represent capital defendants in section 1983 mode-of-execution claims.

7. Juror Intemieivs

Troy challenges the constitutionality of rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar on equal protection grounds and the sufficiency of the postcon-viction order with regard to this claim. As we explain below, relief is not warranted.
Rule 4-3.5(d)(4) precludes a lawyer from initiating communication with any juror concerning a trial with which the lawyer is connected, “except to determine whether a verdict may be subject to legal challenge.” Under the rule, “a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist.”- R. Regulating Fla. Bar 4-3.5(d)(4). Troy’s constitutional challenge to this rule fails for two reasons. First, this claim is procedurally barred because it should have been raised on direct appeal. See Reese v. State, 14 So.3d 913, 919 (Fla.2009) (citing Israel v. State, 985 So.2d 510, 522 (Fla.2008)). Second, even if the claim was not procedurally barred, we have repeatedly rejected constitutional challenges to rule 4-3.5(d)(4). Id. (citing Barnhill v. State, 971 So.2d 106, 117 (Fla.2007)) (rejecting claim that rule 4-3.5(d)(4) violates a defendant’s constitutional right of equal protection). “Furthermore, where the defendant merely complains about the ‘inability to conduct “fishing expedition” interviews,’ the claim *842 is without merit.” Evans v. State, 995 So.2d 933, 952 (Fla.2008) (quoting Johnson v. State, 804 So.2d 1218, 1225 (Fla.2001)). Thus, Troy is not entitled to relief on this subclaim.
Troy’s challenge to the sufficiency of the lower court’s order also fails. To support a lower court’s summary denial of a post-conviction claim, rule 3.851 requires a lower court to disclose its basis for denying relief. See Rose v. State, 985 So.2d 500, 503-04 (Fla.2008). To do so, the court must either state its rationale or attach portions of the record that would refute the claims. Id. Troy challenges the post-conviction order for failing to explain why academics, journalists, and lawyers not connected to his case can conduct “fishing expedition” interviews while trial and post-conviction counsel are precluded from doing so. Although the lower court in the present case did not address this point in detail, the court did explain that the claim was denied because we have repeatedly rejected constitutional challenges to rule 4 — 3.5(d)(4). The lower court provided its rationale for denying relief on the constitutional challenge and, in doing so, sufficiently complied with rule 3.851. Accordingly, Troy is not entitled to relief as to this subclaim.

8. Caldwell Claim

Troy contends that the trial court’s instruction to the jury that its role is advisory diminished its responsibility, contrary to Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The United States Supreme Court held in Caldwell that it is “constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant’s death rests elsewhere.” Id. at 328-29, 105 S.Ct. 2633.
Troy is not entitled to relief on this claim for two reasons. First, Troy is procedurally barred from raising this claim. Although the trial record reflects that Troy filed a pretrial objection to the use of the standard jury instruction, Troy failed to raise this claim on direct appeal. Consequently, his Caldwell claim is procedurally barred. See Hitchcock v. State, 991 So.2d 337, 361 (Fla.2008) (holding that the Caldwell claim is procedurally barred because it could have been raised on direct appeal but was not) (citing Jones v. State, 928 So.2d 1178, 1183 n. 5 (Fla.2006)). Second, Troy’s claim that the trial court’s instruction diminished the jury’s sense of responsibility is meritless. See Card v. State, 803 So.2d 613, 628 (Fla.2001) (holding as meritless a claim that the standard jury instructions which refer to the jury as advisory and refer to jury’s verdict as a recommendation violate Caldwell). Although the instructions provided during the penalty proceeding of Troy’s trial are not identical to those instructions contained in Florida Standard Jury Instruction (Criminal) 7.11, the instructions given to the jury do not materially differ from Florida’s standard jury instructions. See Hitchcock, 991 So.2d at 361. We have repeatedly held that the standard jury instructions are in compliance with Caldwell. See, e.g., Globe v. State, 877 So.2d 663, 674 (Fla.2004). Accordingly, Troy’s claim is without merit.
Troy’s assertion that counsel was ineffective for failing to litigate the Caldwell claim also lacks merit. See Farina v. State, 937 So.2d 612, 618 n. 5 (Fla.2006) (rejecting as meritless a claim that counsel was ineffective for failing to object to comments and instructions that diminished the jury’s sense of responsibility under Caldwell). As discussed above, trial counsel filed a pretrial objection to the use of the standard jury instruction. Furthermore, *843 “counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding.” Farina, 937 So.2d at 618 n. 5 (quoting Teffeteller v. Dugger, 734 So.2d 1009, 1023 (Fla.1999)). Therefore, Troy’s claim fails.

9.Incompetency Claim

In this claim, Troy contends that his Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of his eventual execution. Troy concedes that this claim is not ripe for review since a death warrant has not been issued and asserts that he raises this issue for preservation purposes only. We have repeatedly held that no relief is warranted under similar circumstances. See, e.g., Gonzalez, 990 So.2d at 1035 (rejecting claim that defendant may not be competent at the time of execution where defendant acknowledges that claim is not ripe for review and was being raised only for preservation purposes) (citing State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003)). Troy is likewise not entitled to relief on this claim.

10.Florida’s Death Penalty Statute

Troy next challenges the constitutionality of Florida’s death penalty statute as applied to him and concedes he does so for preservation purposes. In his direct appeal, Troy unsuccessfully asserted the unconstitutionality of Florida’s death penalty statute:
Troy next argues that Florida’s death penalty statute is unconstitutionally invalid because it does not require the findings of each aggravating factor to be made by the jury, pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court has denied relief in appeals where the trial judge has found the “during the course of a felony” aggravator. Given that Troy was convicted of this crime simultaneously with two counts of armed burglary, two counts of armed robbery, and attempted sexual battery, relief on this Ring claim is denied.
Troy, 948 So.2d at 653-54 (citations omitted). Troy now claims that Florida’s death penalty statute is unconstitutional as applied because (1) the indictment fails to provide notice as to aggravators; (2) the statute ■ permits jury recommendations of death based upon a simple majority vote; and (3) the statute does not require jury unanimity as to the existence of specific aggravators. The additional claims that Troy now raises are procedurally barred because Troy failed to raise them on direct appeal. See Evans v. State, 946 So.2d 1, 15-16 (Fla.2006). Therefore, Troy is not entitled to relief on this claim.

11.Arbitrary and Capricious Imposition of the Death Penalty

Troy next asserts that Florida’s capital sentencing statute fails to prevent the arbitrary and capricious imposition of the death penalty and violates the due process guarantees against cruel and unusual punishment. This claim, which Troy concedes he raises for preservation purposes, comprises several subparts: (1) execution by electrocution or lethal injection imposes unnecessary physical and psychological torture without commensurate justification; (2) the statute fails to provide any standard of proof for determining that aggravators outweigh mitigators; (3) the statute fails to define for the circuit court’s consideration each of the aggravators listed in the statute; (4) the-procedure does not allow the independent reweighing of aggravators and mitigators; (5) the aggra-vators have been applied in a vague and inconsistent manner; (6) the statute ere- *844 ates a “presumption of death” whereby if only one aggravator is present it can only be overcome by mitigating evidence so strong as to outweigh the aggravator; and (7) this “presumption of death” violates the Eighth Amendment in that the death penalty is not applied only to the worst offenders.
■ Troy is procedurally barred from raising this claim because the claim could have and should have been raised on direct appeal, but he failed to do so. See Miller, 926 So.2d at 1259-60; see also Jones v. State, 928 So.2d 1178, 1182-83 n. 5 (Fla.2006) (holding that similar claims challenging Florida’s death penalty statute are procedurally barred because they should have been raised on direct appeal). Moreover, we have previously held similar claims to be meritless. See Miller, 926 So.2d at 1260 (rejecting as meritless a claim that aggravators have been applied in a vague and inconsistent manner); Elledge, 911 So.2d at 78-79 n. 28 (rejecting claim that the death penalty statute fails to provide a.standard for determining that aggravators outweigh mitigators, does not define “sufficient aggravating circumstances,” and does not sufficiently define each of the aggravators); Sochor, 883 So.2d at 789 (holding that defendant’s claim that execution by electrocution or lethal injection constitutes cruel and unusual punishment is meritless); Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992) (rejecting as meritless a claim concerning the lack of an independent reweighing of aggravators and mitigators and claim that Florida law unconstitutionally creates a presumption of death).
Lastly, Troy contends that he received ineffective assistance of • counsel because trial counsel failed to properly preserve these issues. However, a defendant may not attempt to circumvent the procedural bar to his claims by raising conclusory allegations of ineffective assistance of counsel. See Miller, 926 So.2d at 1260-61 (citing Thompson, 796 So.2d at 515 n. 5). Furthermore, “[tjrial counsel cannot be deemed ineffective for failing to raise mer-itless claims or claims that had no reasonable probability of affecting the outcome of the proceeding.” Teffeteller, 734 So.2d at 1023. Accordingly, Troy is not entitled to relief on this claim.

12. Cumulative Effect .of Errors

■ Troy contends that he was denied a fundamentally fair trial based on cumulative errors that occurred. We have held:
Where multiple errors are discovered in the jury trial, a review of the cumulative effect of those errors is appropriate because “even though there was competent substantial evidence to support a verdict ... and even though each of the alleged errors, standing alone, could be considered harmless, the cumulative effect of such errors [may be] such as to deny to defendant the fair and impartial trial that is the inalienable right of all litigants in this state and this nation.”
McDuffie v. State, 970 So.2d 312, 328 (Fla.2007) (alterations in original) (quoting Brooks v. State, 918 So.2d 181, 202 (Fla.2005)). However, where the allegations of individual error are procedurally barred or meritless, a claim of cumulative error also fails. See Israel, 985 So.2d at 520 (citing Parker v. State, 904 So.2d 370, 380 (Fla.2005)). Here, with the exception of Troy’s challenge to section 27.702, Florida Statutes, the alleged errors he raises are either procedurally barred, meritless, or do not meet the Strickland standard for ineffective assistance of counsel. Therefore, Troy’s last claim must fail.
CONCLUSION
For the reasons stated above, we affirm the trial court’s denial of postconviction relief.
It is so ordered.
*845 PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., concurs in part and dissents in part with an opinion, in which QUINCE, J., concurs.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. The trial court found the following four aggravators: (1) the capital felony was especially heinous, atrocious, or cruel (HAC), to which the court accorded great weight; (2) Troy was previously convicted of a capital felony or a felony involving the use of or threat of violence, to which the court accorded considerable weight; (3) tire capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment or placed on community control or on felony probation, to which the court assigned considerable weight; and (4) the capital felony was committed during the commission or attempt to commit a robbery or sexual battery, to which the court accorded considerable weight. Troy, 948 So.2d at 642. The trial court also found the pecuniary gain aggravator, but noted that it would be improper doubling to consider it with the robbery aggravator. Id. at 642 n. 4.

. As to mitigation, the trial court found two statutory mental mitigators: (1) impaired capacity, to which the trial court accorded great weight; and (2) extreme mental or emotional disturbance, to which the court accorded moderate weight. The trial court also found fifteen nonstatutory mitigators, all of which were accorded little weight. These *833 mitigators included: (1) Troy's dysfunctional family background; (2) Troy's positive personal characteristics and actions, including protecting a Tennessee correctional officer during a prison incident; (3) Troy's being sexually molested; (4) Troy’s "triple addiction" to alcohol, cocaine and marijuana; (5) Troy's lifelong history of mental and emotional problems; (6) Troy's potential for positive contributions if sentenced to life imprisonment; and (7) Troy’s expressions of remorse. Id.

. We note at the outset that although we conclude that Troy is not entitled to relief on his ineffective assistance of counsel claims, we nevertheless remind postconviction courts of the strong presumption in favor of granting an evidentiary hearing on initial motions seeking postconviction relief. See Amends, to Fla. Rules of Crim. Pro. 3.851, 3.852, & 3.993, 772 So.2d 488, 492 n. 2 (Fla.2000) (stating that adoption of provision addressing eviden-tiary hearings is consistent with Court’s endorsement of a presumption in favor of evi-dentiary hearings on initial postconviction motions raising factually based claims).

. Spencer v. State, 615 So.2d 688 (Fla.1993).

. We observed further on direct appeal that the judge did find and assign weight to various other mitigators that could have a bearing on Troy's emotional maturity. Troy, 948 So.2d at 652.