# Supreme Court of Florida

_____

No. SC19-84
_____

**MARVIN CANNON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC19-727
_____

**MARVIN CANNON,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

February 13, 2020

PER CURIAM.

Marvin Cannon appeals an order of the circuit court denying in part his initial postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus. We have

jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the partial denial of Cannon's postconviction motion and deny the petition for writ of habeas corpus.

## BACKGROUND

Cannon murdered Zechariah Morgan after luring Morgan and another man to a remote piece of farmland under the pretense of selling them deer corn. *Cannon v. State*, 180 So. 3d 1023 (Fla. 2015). Cannon had arranged to drive to the property in Morgan's truck with Morgan, Sam Neel (another victim), and Anton McMillian (Cannon's alleged accomplice). As the truck pulled up to an abandoned house on the property, Cannon stabbed Neel twice in the neck. Neel fled to find help. Officers later found Morgan near his truck, deceased from stab wounds. The truck was on fire. McMillian was apprehended soon thereafter.

Cannon fled on foot, and officers tracked him. Along his path they found Morgan's wallet. At a nearby convenience store, an officer viewed a surveillance video and recognized Cannon in the footage. Two days later, officers apprehended Cannon. Morgan's blood was found on Cannon's shirt.

The jury convicted Cannon of the first-degree murder of Morgan under theories of both premeditation and felony murder. It also found him guilty of robbery with a deadly weapon of Morgan, attempted first-degree premeditated murder and attempted armed robbery of Neel, and arson of the truck. *Id. at* 1031.

The trial court sentenced Cannon to death. *Id.* On direct appeal, this Court vacated the conviction for the attempted robbery of Neel due to insufficient evidence. *Id.* at 1039 n.16. In all other respects, this Court affirmed. *Id.* at 1039-41.

Cannon subsequently filed an initial motion for postconviction relief pursuant to rule 3.851 to vacate his convictions and sentence.[1] One claim asserted that Cannon was entitled to resentencing under *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), because the jury's recommendation of death was not unanimous (the vote was 9 to 3). The court agreed and vacated Cannon's death sentence, causing the remaining penalty-phase claims to become moot.

The trial court denied two claims following an evidentiary hearing: that counsel failed to object and move for mistrial when an officer identified Cannon

---

1. Cannon's postconviction motion raised the following claims: (1) counsel was ineffective during the guilt phase by (a) allowing allegedly biased jurors to serve, (b) failing to object and move for mistrial when an officer identified Cannon in a surveillance video, and (c) failing to object and move for mistrial when the State allegedly shifted the burden of proof during closing argument; (2) counsel allowed pervasive religious themes during both the guilt and penalty phases; (3) Cannon was intellectually disabled, and thus execution was constitutionally prohibited; (4) counsel was ineffective for failing to investigate and present mitigation evidence during the penalty phase; (5) Cannon was entitled to resentencing pursuant to *Hurst v. State*, 202 So. 3d 40 (Fla. 2016); (6) Cannon was illegally sentenced for count V, arson of a vehicle, to 30 years in prison as a prison releasee reoffender (PRR); and (7) Cannon remained sentenced to 15 years in prison for count IV, attempted robbery with a deadly weapon, although that conviction was vacated by this Court on direct appeal.

from a surveillance video and when the prosecutor allegedly shifted the burden of proof during closing argument. The court denied three other claims without a hearing: that counsel permitted allegedly biased jurors to serve; that counsel permitted religious themes of retribution to pervade during trial; and that the Department of Corrections' website incorrectly reflected that Cannon was still serving a sentence for attempted robbery with a deadly weapon, even though this Court had vacated that conviction and sentence on direct appeal.[2]

Cannon appeals the denial of these claims. He also petitions this Court for a writ of habeas corpus, alleging that appellate counsel was ineffective for failing to challenge the trial court's ruling that the State gave race-neutral reasons for using peremptory challenges to strike three African-American jurors. We address these claims below.

## ANALYSIS

### I. Motion for Postconviction Relief

A court may summarily deny a postconviction claim without an evidentiary hearing when the claim is legally insufficient, procedurally barred, or refuted by the record. *Salazar v. State*, 188 So. 3d 799, 808 (Fla. 2016) (citing *Troy v. State,* 57 So. 3d 828, 834 (Fla. 2011)). "Because a court's decision whether to grant an

---

2. The court also corrected Cannon's sentence for count V, arson of a vehicle.

evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling constitutes a pure question of law, subject to de novo review." *Id.* (citing *Reynolds v. State,* 99 So. 3d 459, 471 (Fla. 2012)). "[T]his Court accepts the movant's factual allegations as true to the extent that they are not refuted by the record." *Troy*, 57 So. 3d at 834. "Where the postconviction court has conducted an evidentiary hearing, this Court will defer to the factual findings of the postconviction court so long as those findings are 'supported by competent, substantial evidence, but will review the application of the law to the facts de novo.' " *Mungin v. State*, 141 So. 3d 138, 142 (Fla. 2013) (quoting *Hurst v. State,* 18 So. 3d 975, 988 (Fla. 2009)).

## A.    Ineffective Assistance of Counsel

A defendant who raises a claim of ineffective assistance of counsel must show: "(1) that his counsel's performance was deficient—i.e., unreasonable under prevailing professional norms; and (2) that the deficiency prejudiced the defense— i.e., that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jones v. State*, 998 So. 2d 573, 582 (Fla. 2008) (quoting *Valle v. State,* 778 So. 2d 960, 965-66 (Fla. 2001)); s*ee also Strickland v. Washington,* 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Jones*, 998 So. 2d at 582 (quoting *Strickland,* 466 U.S. at 694). In

determining prejudice, this Court must consider the totality of the evidence. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Williamson v. State,* 123 So. 3d 1060, 1066 (Fla. 2013) (quoting *Strickland*, 466 U.S. at 696). Because *Strickland* requires the defendant to establish both deficient performance and prejudice, when a defendant fails to make a showing as to one prong, it is not necessary to determine whether the defendant has established the other prong. *Whitfield v. State*, 923 So. 2d 375, 384 (Fla. 2005).

Cannon argues that the postconviction court erred in denying his claims that counsel was ineffective during the guilt phase for (1) failing to strike several biased jurors; (2) failing to object and move for mistrial when an officer identified Cannon in a surveillance video; and (3) failing to object when the prosecutor shifted the burden of proof during closing argument. We disagree and therefore affirm the postconviction court's denial of these claims.

### 1. Jurors Biased Towards Death Penalty

Cannon argues counsel was ineffective for failing to strike several jurors who allegedly demonstrated a bias in favor of the death penalty. The postconviction court summarily denied Cannon's claim, finding the record did not demonstrate bias.

Cannon's brief in this appeal failed to explain how any alleged juror bias in favor of the death penalty prejudiced Cannon during the guilt phase of the trial. At oral argument, counsel declined an invitation from the Court to explain why this claim was not moot in light of the postconviction court's vacatur of Cannon's death sentence. Because Cannon failed even to argue (much less establish) prejudice, we affirm the denial of this claim.

### 2. Identification of Cannon in Surveillance Video

Cannon claims that trial counsel was ineffective for failing to object and move for mistrial when an officer identified Cannon in a surveillance video. The trial court denied this claim following an evidentiary hearing.

During trial, an officer who assisted in the search for Cannon testified that he went to a gas station, where an attendant showed him a surveillance video. The video was entered into evidence and played for the jury. The officer identified Cannon in the video, testifying, "That's Marvin Cannon. I recognize him. He has been personally familiar to me for a number of years."

In his postconviction motion, Cannon argued that the officer's statement gave rise to a reasonable implication that the officer knew Cannon from the latter's prior involvement in criminal activity. Cannon reasoned that this implication constituted improper collateral crimes evidence, also referred to as *Williams*[3] Rule

---

3. *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

evidence. Cannon argued that counsel was ineffective for failing to object and move for mistrial.

During the postconviction evidentiary hearing, trial counsel testified that he did not believe it was objectionable for the officer to testify that he knew Cannon "personally." Counsel stated that trial took place in a small community where people knew each other. He did not interpret the statement to mean that the officer knew Cannon from prior criminal incidents. The postconviction court denied the claim, finding that the statement did not suggest prior law enforcement contact with Cannon or prior bad acts. Alternatively, the court found there was no prejudice because the statement was brief, the source of the officer's knowledge was not disclosed, and Cannon's identity in the surveillance footage was not contested.

We agree with the postconviction court that Cannon failed to establish that counsel's performance was deficient. On its face and in context, the officer's testimony did not imply that Cannon had a criminal background. Under these circumstances, an objection to the officer's testimony would not have been sustained, and "counsel cannot be deemed deficient for failing to make a meritless objection." *Raleigh v. State*, 932 So. 2d 1054, 1064 (Fla. 2006).

### 3. Burden Shifting During Closing Argument

As we mentioned earlier, the prosecution maintained that Cannon lured the victims to a remote property under the pretense of selling them deer corn there. The State argued that the absence of deer corn at the property was additional evidence of Cannon's intent. To prove that there was no deer corn at the property, the prosecution presented the testimony of two responding officers. The first officer arrived during the daylight and searched the property but found no corn. The second officer arrived at twilight when visibility was limited, but he returned several days later during the daylight to take photographs. He also saw no corn. The defense presented the testimony of Cannon's father, who stated the property was unsecured and could have been accessed by anyone. However, the father was not asked if he stored deer corn on the property.

Cannon argues that counsel was ineffective for failing to object and move for mistrial during closing argument when the State pointed out that Cannon's father never testified that he stored deer corn on the property where the incident occurred. Cannon asserts that the State was required to prove the absence of deer corn on the property in order to prove Cannon's intent, but it failed to do so.[4] Cannon maintains that the State instead improperly urged the jury to convict if it

---

4. We address Cannon's argument without accepting the premise that it mattered whether the State proved that there was no corn on the property.

found Cannon failed to prove the presence of deer corn on the property, thereby shifting to Cannon the burden of proof. The postconviction court summarily denied this claim, finding that the State's comment was a proper comment on the evidence and that Cannon failed to demonstrate prejudice.

"[I]t is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998). However, a prosecutor's comments are not improper if they are an invited response to an argument made by the defendant. *Scott v. State*, 66 So. 3d 923, 930 (Fla. 2011). The State is permitted to point out a lack of evidence to support an alternative theory of the case put forth by the defense. *Id.*

Here defense counsel suggested in closing argument that the deer corn could have been on the property at the time of the incident and that the responding officers could have overlooked it because visibility was limited after dark. Counsel acknowledged that the second officer returned to the property in the daylight several days later. However, the defense theorized that an unknown individual could have come onto the unsecured property and taken the deer corn prior to the second officer's return.

In rebuttal, the State challenged that theory of events, reminding the jury that the first officer arrived during the daylight hours and did not find corn. The State

further asserted, "[I]t was very interesting that the defense presented [Cannon's father]. Did you hear [him] testify, oh yeah, there was corn out there; they just didn't see it. That's where I put corn. Did [he] say anything like that, that I store corn at this location?" This argument simply pointed out the lack of evidence to support the alternative theory put forth by the defense, which was permissible. *See Scott*, 66 So. 3d at 930.

Under these circumstances, the trial court would not have sustained an objection to the State's argument, and counsel cannot be deemed ineffective for failing to raise a meritless objection. *Raleigh*, 932 So. 2d at 1064. We therefore affirm the denial of this claim.

### 4.    Religious Themes During Guilt and Penalty Phases

Cannon argues that counsel was ineffective for allowing pervasive themes of religious retribution throughout the trial. He complains that jurors made references to religion during voir dire, that the prosecutor referenced a religious principle during closing argument of the guilt phase, and that a defense witness invoked religious authority during the penalty phase.

The postconviction court summarily denied this claim, finding that counsel did nothing more than permit the prospective jurors to express their religious views during voir dire, that the prosecutor's allusion to religion during closing argument was de minimis, and that the comment made during the penalty phase was moot

- 11 -

because Cannon's sentence had been vacated. We agree that Cannon cannot show prejudice as to his penalty phase claim because his sentence has been vacated. We also agree that Cannon cannot show deficiency or prejudice from the religion-oriented statements made during voir dire and in closing argument.

*Voir Dire*. Cannon asserts that counsel was ineffective for engaging the prospective jurors in religious discussions during voir dire. He complains that defense counsel should not have encouraged the prospective jurors to discuss religious philosophy. In an apparent contradiction, he also argues counsel should have engaged the prospective jurors in further discussions about religion to ensure they could set aside their religious beliefs and follow the law. Many of the prospective jurors who discussed religion were not ultimately selected to serve on the jury, and Cannon does not allege under this claim that the jurors who served had actual bias due to their religious beliefs. Regardless, Cannon argues that these discussions invoked religious authority, which diminished the jurors' sense of responsibility for their verdict.

During voir dire, one prospective juror brought up the biblical concept of "an eye for an eye." When asked to explain her view of the death penalty, she stated: "Since men made laws the death penalty has been imposed an eye for an eye, a tooth for a tooth." However, she stated she did not always agree with how the death penalty was imposed and believed that was a decision for jurors to make

after they had been given all the facts. A second prospective juror agreed, stating, "like she said, an eye for an eye, a tooth for a tooth."

Defense counsel then asked for "a church person" to explain their understanding of this doctrine. Three prospective jurors responded. One individual was uncertain whether this doctrine appeared in the Bible and was unable to explain what it meant. Another individual stated the doctrine was not intended to be "vindictive" or to bring "retribution" but to ensure justice was measured out equally between the rich and the poor. A third prospective juror stated this doctrine did not literally mean "an eye for an eye" but instead was a measure for repaying debts, such as "a pound of flour for a pound of flour."

Several other jurors mentioned religion during voir dire. Two individuals stated they could not put aside their religious convictions and follow the law. They were stricken. Two prospective jurors mentioned that they were ministers. Another prospective juror stated she went to church with Cannon's mother but that it would not affect her ability to be impartial.

*Closing Argument.* Cannon further argues that counsel was ineffective for failing to object and move for mistrial when the prosecutor made a biblical allusion during closing argument. The prosecutor summarized the evidence and then stated: "Basically, it's a situation, folks, where this man [Cannon] reaps what he sowed on that particular day. And what he sowed are the charges he is facing."

Cannon argues that the jurors would have recognized this comment as a biblical reference indicating that it was God's will that they convict Cannon and sentence him to death.

We conclude that Cannon cannot demonstrate deficiency or prejudice based on the discussion and comments that he has identified. It was not improper for counsel during voir dire to probe whether any potential jurors held religious beliefs that would preclude them from following the trial court's instructions on the law. *See Ellerbee v. State*, 232 So. 3d 909, 924 (Fla. 2017) (prosecutor's discussion of religion with a prospective juror was appropriate to ascertain the juror's ability to follow the law). And there is no reasonable probability that the prosecution's fleeting biblical allusion at closing affected the jury's verdict. Specifically, we see no danger that any religion-oriented comments diminished the jury's sense of responsibility for its verdict or caused the jury to base its decisions on religious authority rather than on the trial court's instructions. *See id*. at 923 (observing that "not every statement referencing God or the Bible is prejudicial"). Accordingly, we affirm the postconviction court's denial of this claim.

## B. Department of Corrections Website

Cannon argues that the Department of Corrections' website reflects he is still serving a 15-year sentence for the attempted robbery of Neel, even though this Court vacated that conviction on direct appeal. In his postconviction motion,

- 14 -

Cannon asked the court to enter an order vacating his conviction and sentence for that count and ordering the Department to release him as to that count. The postconviction court denied the claim, finding Cannon failed to present any authority that would authorize the court again to vacate an already-vacated judgment and sentence solely as a means of correcting an error on a website. We agree.

The State notes that the website includes a disclaimer stating that the Department does not guarantee the accuracy or completeness of the information on its website. It instructs any person who believes that the information is inaccurate to contact the Department directly. Cannon has not indicated that he attempted to resolve the issue with the Department directly or that he confirmed whether this error is merely one of the Department's website rather than its official records. We affirm the denial of this claim without prejudice to Cannon seeking relief through appropriate means if he is unable to resolve it with the Department directly.

## II. Petition for Writ of Habeas Corpus

Cannon petitioned this Court for a writ of habeas corpus alleging ineffective assistance of appellate counsel. He argued that counsel should have raised an issue on direct appeal challenging the trial court's determination that the State gave genuine, race-neutral reasons for exercising three peremptory challenges against African-American jurors. We find that appellate counsel was not ineffective for

failing to raise this claim because trial counsel failed to renew an objection to these strikes prior to the jury being sworn. This issue would have been procedurally barred on appeal.

More than one objection is required to preserve a claim that a peremptory challenge is racially motivated. After the initial objection, "the issue is not preserved for appellate review if the party objecting to the challenge fails to renew the objection before the jury is sworn." *Zack v. State*, 911 So. 2d 1190, 1204 (Fla. 2005) (citing *Franqui v. State*, 699 So. 2d 1332, 1334 (Fla. 1997); *Joiner v. State*, 618 So. 2d 174 (Fla. 1993)). "By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury." *Id.* (citing *Joiner*, 618 So. 2d at 176).

A challenge to the granting or denying of a peremptory strike is procedurally barred from being raised on direct appeal if counsel failed to renew the objection prior to the jury being sworn. *Philmore v. State*, 820 So. 2d 919, 930 (Fla. 2002) (finding claim that the trial court erred in permitting the State to exercise a peremptory strike was "waived" and thus "procedurally barred" on direct appeal because the defendant "failed to renew his objection prior to the jury being sworn"); *Franqui*, 699 So. 2d at 1334 (finding claim that the trial court erred in granting a peremptory strike was "procedurally barred" on direct appeal because

"defense counsel failed to properly renew his objection . . . before accepting the jury and allowing it to be sworn"). "Appellate counsel cannot be ineffective for the failure to assert an argument that would have been procedurally barred because it was not presented during trial." *Doorbal v. State*, 983 So. 2d 464, 492 (Fla. 2008); s*ee also Mansfield v. State*, 911 So. 2d 1160, 1178 (Fla. 2005) ("Appellate counsel cannot be deemed ineffective for failing to raise a claim which 'would in all probability' have been without merit or would have been procedurally barred on direct appeal." (quoting *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000))).

Here, defense counsel raised a contemporaneous objection when the State sought to exercise three peremptory challenges on African-American jurors. The trial court initially granted the first two peremptory strikes but denied the third. On the morning of trial, before the jury was sworn, the State renewed its peremptory challenge to the third juror. Defense counsel objected. The trial court granted the peremptory strike. Defense counsel then moved to reopen jury selection with new prospective jurors. The court denied the motion.

Prior to swearing in the jury, the trial court handled several administrative matters including speaking with a juror about a scheduling issue concerning a federal jury summons, clarifying evidentiary rulings, making arrangements with counsel for the presentation of demonstrative aids, and issuing a warning about the rules of courtroom decorum. The trial court then asked if there was "[a]nything

else before we bring the jury in?" Defense counsel responded, "No." The court swore in the jury without objection.

Cannon asserts that he renewed his objection to the third juror on the morning of trial when he responded to the State's renewed motion to strike that juror. However, the preservation requirement contemplates a party renewing its objection after the trial court issues an adverse ruling. *Carratelli v. State*, 961 So. 2d 312, 318 (Fla. 2007). The trial court initially denied the State's motion to strike the third juror. Thus, on the morning of trial, Cannon did not "renew" his objection to striking the third juror. He simply continued making his initial objection.

Cannon further reasons that he effectively renewed his objection to the first two peremptory strikes when he asked the trial court to reopen voir dire, which he believes should have indicated to the court that he was unhappy with the racial makeup of the jury. However, counsel did not "renew[] his objection or accept[] the jury subject to his earlier . . . objection," which "would have apprised the trial judge that [he] still believed reversible error had occurred." *Joiner*, 618 So. 2d at 176.

The requirement that an objection must be renewed "is not a mere technicality." *Carratelli*, 961 So. 2d at 318. "[R]enewing an objection before the jury is sworn gives the trial court one last chance to correct a potential error and

avoid a possible reversal on appeal," and it "allows counsel to reconsider the prior objection." *Id.* at 319.

Because trial counsel failed to renew the objections prior to the jury being sworn, this claim would have been procedurally barred on direct appeal. *Philmore*, 820 So. 2d at 930. Appellate counsel was not ineffective for failing to raise a procedurally barred claim. *Doorbal*, 983 So. 2d at 492. We deny the petition for writ of habeas corpus.

### III. Conclusion

Based on the foregoing, we affirm the postconviction court's denial of relief for a new guilt phase, and we deny the petition for writ of habeas corpus.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Gadsden County,
        Jonathan Eric Sjostrom, Judge - Case No. 202010CF000663BXXXMX
And an Original Proceeding – Habeas Corpus

Eric C. Pinkard, Capital Collateral Regional Counsel, David Dixon Hendry, Rachel Paige Roebuck, Jami Leigh Chalgren, and Kara Ottervanger, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

        for Appellant/Petitioner

Ashley Moody, Attorney General, and Lisa A. Hopkins, Assistant Attorney General, Tallahassee, Florida,

for Appellee/Respondent